## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

**BRAMAN MOTORS, INC., d/b/a BRAMAN BMW**, for itself and in the name of the Department of Highway Safety and Motor Vehicles of the State of Florida, for its use and benefit, and

**PALM BEACH IMPORTS, INC., d/b/a BRAMAN MOTORCARS**, for itself and in the name of the Department of Highway Safety and Motor Vehicles of the State of Florida, for its use and benefit, and

**The DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES** of the State of Florida, for the use and benefit of Braman Motors, Inc. and Palm Beach Imports, Inc.

        Plaintiffs,

    v.

**BMW OF NORTH AMERICA, LLC**, and **BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT**.

        Defendant.

Case No. 17-cv-23360-DPG

## PLAINTIFFS' OPPOSITION TO BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT'S MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ......................................................................................................... 2

ARGUMENT ............................................................................................................. 3

I.      BMW AG HAS CONSENTED TO JURISDICTION IN FLORIDA ............................. 3

II.     THE COURT HAS PERSONAL JURISDICTION OVER BMW AG........................... 5

     A.    Legal Standard .................................................................................. 6

     B.    Florida's long-arm statute and the Florida Dealer Act provide a basis for personal jurisdiction.............................................................................. 6

     C.    The exercise of personal jurisdiction is consistent with due process.................... 6

           1.    Braman's claims relate to BMW AG's contacts with Florida .................. 7

           2.    BMW AG purposefully availed itself of the privilege of doing business in Florida ..................................................................... 8

           3.    The exercise of personal jurisdiction over BMW AG does not offend traditional notions of fair play and substantial justice................ 11

III.    BRAMAN IS ENTITLED TO JURISDICTIONAL DISCOVERY .............................. 12

IV.    BMW AG'S RULE 12(B)(6) MOTION TO DISMISS SHOULD BE DENIED .......... 13

     A.    Braman satisfies the liberal federal pleading requirements by providing BMW AG with fair notice of Braman's claims against it and Braman's grounds for relief.......................................................................... 14

     B.    Florida Dealer Act Section 320.6405 exposes a motor vehicle manufacturer to direct liability, and BMW AG's argument to the contrary is incorrect................................................................................. 16

           1.    Section 320.6405's plain language dictates that manufacturers are directly liable for the conduct of their agents that violates the Florida Dealer Act.............................................................. 16

           2.    BMW AG's construction of Section 320.6405 is unsupported and does not comport with the Florida Dealer Act's purpose ........................ 17

CONCLUSION......................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Bodycare Sols. LLC v. Thione Int'l, Inc.*,
514 F. Supp. 2d 1326 (S.D. Fla. 2007) ..................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................13

*Backjoy Orthotics, LLC v. Forvic Int'l Inc.*,
Case No: 6:14-cv-249-Orl-41TBS, 2016 WL 7664290 (M.D. Fla. Mar. 7,
2016) ........................................................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................13, 14

*Blitzsafe Texas, LLC v. BMW AG*,
CIVIL ACTION NO. 2:17-CV-00418-JRG, 2018 WL 4849345 (E.D. Tex.
Sep. 6, 2018) ......................................................................................................9, 15

*BMW of North America, LLC et al v. BelgiumDomains, LLC et al*,
1:07-cv-23 349-AJ (S.D. Fla. 2007) .....................................................................12

*BMW of North America, LLC, et al v. Highlinewheels Corp.*,
1:04-cv-217 25-UU (S.D. Fla. 2004) ....................................................................12

*BMW of North America, LLC et al v. Jason Athanas*,
0:12-cv-61455-WPD (S.D. Fla. 2012) ..................................................................12

*Brown v. Bottling Grp., LLC.*
159 F. Supp. 3d 1308 (M.D. Fla. 2016) ..........................................................10, 11

*Chaparro v. Carnival Corp.*,
693 F.3d 1333 (11th Cir. 2012) .............................................................................14

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
543 U.S. 157 (2004) ..............................................................................................18

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
593 F.3d 1249 (11th Cir. 2010) .....................................................................7, 8, 11

*Eaton v. Dorchester Dev., Inc.*,
692 F.2d 727 (11th Cir. 1982) ...............................................................................12

*Exhibit Icons, LLC v. XP Companies, LLC*,
609 F. Supp. 2d 1282 (S.D. Fla. 2009) ...................................................................6

*Gilbert v. Daniels*,
   624 Fed. Appx. 716 (11th Cir. Aug. 28, 2015) .................................................................14

*Grobman v. Posey*,
   863 So. 2d 1230 (Fla. Dist. Ct. App. 2003) ....................................................................17

*GSW, Inc. v. Long Cty., Ga.*,
   999 F.2d 1508 (11th Cir.1993) ........................................................................................13

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ..........................................................................................................6

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011) ..........................................................................................................9

*Louis Vuitton Malletier, S.A. v. Mosseri*,
   736 F.3d 1339 (11th Cir. 2013) ..............................................................6, 7, 9, 11, 12

*Marshon v. Fresh Mkt., Inc.*,
   CASE NO. 16-81609-CIV-MIDDLEBROOKS, 2017 WL 78797 (S.D. Fla.
   Jan. 6, 2017) ....................................................................................................................15

*McCullough v. Royal Caribbean Cruises, Ltd.*,
   Case No. 16-cv-20194-GAYLES, 2017 WL 6372619 (S.D. Fla. Jan. 11, 2017) ...................13

*Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of N. Am., Inc.*,
   32 F.3d 528 (1994) ...........................................................................................................18

*Rivell v. Private Health Care Sys., Inc.*,
   520 F.3d 1308 (11th Cir. 2008) .......................................................................................14

*Roe v. Aware Woman Ctr. For Choice, Inc.*,
   253 F.3d 678 (11th Cir. 2001) .........................................................................................15

*Rolls-Royce Motor Cars NA, LLC et al v. Bentley Specialists, Inc., et al*,
   9:08-cv-81214-KAM (S.D. Fla. 2009) ............................................................................12

*Sierra Equity Grp., Inc. v. White Oak Equity Partners*,
   LLC, 650 F. Supp. 2d 1213 (S.D. Fla. 2009) ..................................................................12

*Sierra Equity Grp., Inc. v. White Oak Equity Partners*,
   LLC, No. 08-80017-CIV, 2008 WL 1771857 (S.D. Fla. Apr. 15, 2008) ................................13

*Smith v. Poly Expert, Inc.*,
   186 F. Supp. 3d 1297 (N.D. Fla. 2016) .............................................................................9

*Tomas v. Bayerische Motoren Werke*,
   No. 5:17-01664, 2018 WL 6181172 (N.D. Ala. Nov. 27, 2018) .........................................8

*Trustees of the ACRA-Local No. 725 Pension Tr. Fund v. Core Admin. Servs., Inc.*,
Civil Action No. 15-22720-Civ-Scola, 2015 WL 12564323 (S.D. Fla. Dec. 22, 2015) ..................................................................................................................14, 16

*Walden v. Fiore*,
134 S. Ct. 1115 (2014) .........................................................................................7

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) .............................................................................................9

## Statutes

Fla. Stat. § 320.6405 ................................................................................. *passim*

Fla. Stat. § 48.193(1)(a)(1), (2), (6) & (7) ...................................................................6

Fla. Stat. § 320.61(5) ...............................................................................................4

Fla. Stat. § 320.63 .............................................................................................3, 16

Fla. Stat. § 320.605 ..............................................................................................19

## Other Authorities

Federal Rule of Civil Procedure 12(b)(2) ...........................................................13, 19

Federal Rule of Civil Procedure 12(b)(6) .......................................................13, 16, 19

## PRELIMINARY STATEMENT

BMW AG manufactures tens of thousands of automobiles that are sold by Florida BMW dealers every year. Plaintiffs in this action sell almost 5,000 BMW vehicles each year *themselves*. Through layers of shell corporations between BMW NA and BMW AG, BMW AG owns 100% of BMW NA, its U.S. distributor. BMW AG often receives orders from Florida dealers and modifies the cars it is building so that they specifically meet the needs of those Florida dealers, and then earmarks the vehicles for shipment to Florida. BMW AG ships parts to a distribution center in Jacksonville, and then to Florida dealers. BMW AG takes ownership of over 400,000 BMW SUVs in South Carolina as they are produced. Pursuant its international distribution plan, many such SUVs end up in Braman's showrooms. And Florida is the third largest state in the union.

For BMW AG to claim that it did not anticipate being subject to jurisdiction in Florida is laughable. BMW AG has purposefully availed itself of this forum. Indeed, BMW AG's distribution network in the United States, and specifically in Florida, is on trial in this case. Braman contends that BMW AG shifted tens of thousands of units from global markets in a downturn, and shunted them upon the U.S. market, where it knew it had a built-in dealer network that could be forced to absorb the blow. BMW AG's actions are a subject of this lawsuit.

Moreover, to be licensed, BMW NA has to certify under state law that it (a) is authorized by BMW AG to distribute in Florida, and (b) will abide by the Florida Dealer Act, including the provision that binds manufacturers as principals for the acts of their distributor/importer agent. Either BMW NA is operating in Florida with BMW AG's knowledge and consent as BMW AG's agent, or it is operating unlawfully. BMW AG's motion to dismiss should be denied.

## BACKGROUND

Braman alleges in its Third Amended Complaint that BMW AG shunted unwanted vehicles from its global network onto the U.S. market, where BMW NA could exert coercive measures over the U.S. dealer network to buy those unwanted vehicles. (TAC[1] at ¶ 2.) Braman alleges that BMW NA, acting on behalf of BMW AG per Florida law, engaged in a scheme of artificial "punching," whereby dealers are instructed to report units as sold when they were not, in order to help absorb these increases. (*See id*. at ¶¶ 67-73.) Further, Braman alleges that BMW NA undertook measures under the "Added Value Program" to modify the franchise relationship in violation of Florida law, putting unprecedented control of the dealership in BMW NA's hands. (*See id*. at ¶¶ 28-66.) Braman also alleges that BMW AG exerts influence and control over its indirect, wholly-owned subsidiary (*id.* at ¶ 82), and believes that discovery will bear this out.

Put logically, it would be impossible for BMW NA to "dump" excess units into the American market generally, and Florida and Braman specifically, unless those units were put into BMW NA's allocation by BMW AG. BMW AG would not redirect units to a market at full capacity, unless it had reason to believe that market could absorb excess capacity. In short, if Braman's allegations against BMW NA regarding the punching scheme are true, it is impossible for BMW AG <u>not</u> to be involved. And at this stage of proceedings, Braman's allegations, and all reasonable inferences therefrom, must be taken as true.

Moreover, extrinsic evidence supports the finding of jurisdiction here. First, BMW Manufacturing previously submitted an affidavit describing how every one of the hundreds of thousands of SUVs produced in Spartanburg, South Carolina become BMW AG property the moment they roll off the assembly line. (ECF #79-1 at ¶ 6.) BMW NA then distributes those cars for BMW AG in the United States (*id.* at ¶ 7), including to dealers in Florida such as Braman.

---

[1] "TAC" refers to the Third Amended Complaint of Plaintiffs, filed in this action on January 31, 2019, ECF #125.

2

Second, the declaration of Alex Shack ("Shack Decl.") submitted contemporaneously herewith, describes how Florida dealers like Braman place build orders that result in modifications to the vehicles in the process of being manufactured in Germany, such as tech packages and trim level, and, before they even leave the plant, those vehicles are accordingly earmarked to be shipped to those specific ordering dealers in Florida. (Shack Decl at ¶¶ 6-14.) BMW NA has a large distribution center in Jacksonville, Florida, to which BMW AG ships parts directly. (*Id*. at ¶ 22.)

The allegations and the extrinsic evidence provided by both BMW MC and Braman indicate that BMW AG is more heavily involved in the Florida distribution network than BMW AG's self-serving affidavit lets on. BMW AG's motion to dismiss should be denied.

## ARGUMENT

### I.   BMW AG HAS CONSENTED TO JURISDICTION IN FLORIDA.

In order to be licensed as a distributor of BMW vehicles in Florida, BMW NA had to represent to the Florida Department of Highway Safety and Motor Vehicles that it had a distributor agreement with and authorization from BMW AG to be the distributor of those vehicles in Florida. Fla. Stat. § 320.63 (requiring distributor contracts be submitted to Florida DHSMV); Florida DHSMV Form 84256[2] at *6 (requiring that Florida "Distributor and Importer" applicants "provide copies of an agreement between the manufacturer and themselves authorizing the applicant to distribute or import the manufacturer's vehicles"). Under that arrangement, by operation of law, BMW AG has consented to Florida's regulations and to be subject to suit here. The Dealer Act provides, in relevant part, *id.* § 320.6405 (emphases added):

> Any parent, subsidiary, or common entity of a manufacturer; ***distributor***; importer; or other entity, ***which by contractual arrangement or otherwise pursuant to the direction of the manufacturer***, engages in the distribution in this state of line-make motor vehicles manufactured or substantially manufactured by such manufacturer, ***shall be deemed to be the agent of the***

---

[2] Available at https://www.flhsmv.gov/pdf/forms/84256.pdf, last retrieved on February 21, 2019.

**manufacturer for the purposes of any franchise agreement entered into between such agent and a motor vehicle dealer engaged in business in this state and shall be bound by the terms and provisions of such franchise agreement as if it were the principal.** A manufacturer of line-make motor vehicles which are offered for sale or lease in this state under any franchise agreement executed by an agent of such manufacturer is bound by the terms and provisions of such franchise agreement as if it and not the agent had executed the franchise agreement and, **notwithstanding whether it is licensed pursuant to s. 320.61, said manufacturer shall be subject to all of the restrictions, limitations, remedies, and penalties of ss. 320.60-320.70 related to such franchise agreement, the performance thereof, or any cause of action pertaining thereto**.

Under these and other Dealer Act provisions, BMW AG is the principal of BMW NA, its wholly-owned distributor and agent in the United States. *See* Fla. Stat. § 320.61(5). BMW NA, in its capacity as BMW AG's agent, specifically sought licensure in Florida and agreed to be bound by Florida law, including the Dealer Act provisions making BMW AG—BMW NA's principal— liable for any Dealer Act violations committed by BMW NA. *See id.* §§ 320.61; 320.6405; *see also* Declaration of David Leibowitz, dated December 4, 2018 (attaching BMW NA applications to the Florida DHSMV and other documents demonstrating BMW AG control). BMW AG purposefully markets, sells, and distributes BMW-brand motor vehicles in Florida through BMW NA. Indeed, BMW AG could not sell its vehicles in Florida without BMW NA's licensure. BMW AG, as principal of BMW NA, is thus squarely within this Court's jurisdiction by consent.  If BMW AG did not want to be subject to claims of Florida BMW dealers, it could have instructed BMW NA to not seek licensure in Florida and not distribute BMW vehicles in Florida.

BMW AG's argument to the contrary is myopic and unavailing. BMW AG hones in on the phrase "by contractual arrangement or otherwise pursuant to the direction of the manufacturer," and claims (1) that it has no such contract, and (2) that BMW AG does not "direct or control the distribution of BMW motor vehicles in Florida." F.S.A. § 320.6405. (*See* BMW AG Br. at 18.) First, it must have such contract because Florida law requires BMW NA to have such a contract

4

for licensure. Second, such granular level of control is unnecessary. The statute requires only that

the agent distributor (BMW NA) engage in distribution in the state of Florida "pursuant to the

direction of the manufacturer." BMW AG surely directs BMW NA to sell in all 50 states—indeed,

it would be hard to imagine a situation where BMW AG would permit BMW NA to refuse to sell

vehicles in the third largest state in the country. It need provide no further direction than that.

Certainly, BMW AG has not claimed that BMW NA is selling cars in Florida <u>against BMW AG's</u>

<u>wishes</u> and is doing so in an <u>unauthorized</u> manner. If that is the case, BMW AG should correct its

factual declaration and let the Court know that BMW NA is operating in Florida unlawfully.

## II.    THE COURT HAS PERSONAL JURISDICTION OVER BMW AG.

BMW AG's argument has been rejected in this Circuit. In *King v. General Motors*, the

court rejected GM Canada's argument that it never purposefully availed itself of the privilege of

conducting activities in Alabama:

> Here, GM Canada, the entity who built certain vehicles for GM Corporation
> to distribute specifically in the United States, including Alabama, cannot
> genuinely maintain that it does not serve the Alabama market. … As one of
> these vehicles gave rise to the current cause of action, the economic realities
> of GM Canada and GM Corporation's commercial relationship establish
> sufficient "minimum contacts" with Alabama to demonstrate a targeting of
> Alabama's commercial automobile market and evidence that GM Canada
> purposefully availed itself to the benefits and privileges of this market.

Civil Action No. 5:11-cv-2269-AKK, 2012 WL 1340066, at *6-*8 (N.D. Ala. Apr. 18, 2012). This

Court should reject BMW AG's motion along the same lines, for the reasons that follow.

A.      **Legal Standard**

When deciding a motion to dismiss for lack of personal jurisdiction, a court must: (1) determine whether the state's long-arm statute provides a basis for personal jurisdiction, and (2) if the statute is satisfied, determine whether sufficient minimum contacts exist between the defendant and the forum state so as to satisfy traditional notions of fair play and substantial justice under the Fourteenth Amendment. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). If a defendant challenges personal jurisdiction by submitting evidence in support of its position, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Id*. Where the evidence conflicts, the district court must construe all reasonable inferences in the plaintiff's favor. *See Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1291–92 (S.D. Fla. 2009).

B.      **Florida's long-arm statute and the Florida Dealer Act provide a basis for personal jurisdiction.**

Florida's long-arm statute provides personal jurisdiction over any person "who personally or through an agent": (i) operates or engages in business in Florida, (ii) commits a tortious act, (iii) causes injury to persons or property within this state arising from an act outside of the state, or (iv) breaches a contract for actions required to be performed in this state. Fla. Stat. § 48.193(1)(a)(1), (2), (6) & (7). Plaintiffs have alleged BMW AG has committed all four. The Florida Dealer Act, as discussed in Section I, *supra*, also provides grounds for jurisdiction. Fla. Stat. § 320.6405.

C.      **The exercise of personal jurisdiction is consistent with due process.**

Once jurisdiction is established under the Florida statutes, the court next considers whether the exercise of personal jurisdiction satisfies the requirements of due process. Those requirements

are satisfied where the nonresident defendant has purposefully established "certain minimum contacts [with the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

The Eleventh Circuit applies a three-part due process test for sufficient minimum contacts:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton*, 736 F.3d at 1355. Plaintiffs bear the burden of establishing the first two prongs. The defendant must then make a compelling case that the exercise of jurisdiction would violate "traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

### 1.      Braman's claims relate to BMW AG's contacts with Florida.

Braman's claims arise out of and relate to BMW AG's deliberate contacts with Florida. Plaintiffs' claims are based on BMW AG's very business model: BMW AG manufactures vehicles that are ordered and purchased by Florida dealers, including Braman. BMW AG custom builds tens of thousands of units for delivery and sale to dealers in Florida every year. The AVP Program and "punching" activity at the heart of this litigation is intimately tied to the vehicles that BMW AG purposefully directs to Florida. *See Advanced Bodycare Sols. LLC v. Thione Int'l, Inc.*, 514 F. Supp. 2d 1326, 1330-32 (S.D. Fla. 2007) (finding minimum contacts and stating that movement of nonresident manufacturer's products in Florida was purposeful and did not occur under fortuitous circumstances, and thus the foreign manufacturer should have reasonably foreseen being haled into Florida courts); *Backjoy Orthotics, LLC v. Forvic Int'l Inc.*, Case No: 6:14-cv-249-Orl-41TBS, 2016 WL 7664290 at *9 (M.D. Fla. Mar. 7, 2016) (finding that foreign manufacturer's

business relationship with U.S. company for national sales gave rise to cause of action in Florida).

The Eleventh Circuit's recent decision in *Waite v. All Acquisition Corp.* is instructive. 901 F.3d 1307 (2018). In that case, a former construction worker was exposed to Union Carbide's asbestos in Massachusetts. He later moved to Florida and developed mesothelioma, a fatal cancer. *Id*. at 1310. In affirming the district court's reconsideration order finding no personal jurisdiction over Union Carbide, the Eleventh Circuit explained that the company's contacts with Florida had to be a <u>but-for</u> cause of the cause of action—in other words, without those contacts, the plaintiff's claim would not exist. *Id*. at 1313-1314. Since Union Carbide had sold the asbestos into Massachusetts, it was only plaintiff's fortuitous choice to move to Florida that gave rise to a connection there; Union Carbide's actions played no role in the cause of action. *Id*. at 1314-1315.

In stark contrast, here BMW AG's purposeful distribution of tens of thousands of vehicles and parts to the state of Florida is a <u>but-for</u> cause of Plaintiffs' Dealer Act claims. Without BMW AG's activities, there would be no BMW dealerships in Florida, and no regulations of vehicle manufacturers to violate.[3]

> ## 2. BMW AG purposefully availed itself of the privilege of doing business in Florida.

Under the "minimum contacts test" a court must assess the nonresident Defendant's contacts for purposeful availment with the forum state and ask whether those contacts: (1) are

---

[3] BMW AG makes much of the fact that Braman's original briefing relied on a case that was overturned only after BMW AG filed its motion. *See Tomas v. Bayerische Motoren Werke*, No. 5:17-01664, 2018 WL 6181172 at *3 (N.D. Ala. Nov. 27, 2018). But the reason *Tomas* was overturned has nothing to do with the facts of this case; indeed, it is distinguishable for the same reason that *Waite* is distinguishable. In *Tomas*, the Court reversed its previous ruling that BMW AG was subject to jurisdiction in Alabama because of general stream of commerce theories, as the contacts that BMW AG had with the state of Alabama were not the "but for" cause of Tomas's claims. *See Tomas* at *2-3. Here, Braman has demonstrated specific contacts that BMW AG has had with the state of Florida, and BMW AG's distribution system in the state of Florida is on trial in this case. In this case, and fully consistent with *Tomas* and *Waite*, jurisdiction is premised upon <u>BMW AG's</u> actions and decisions with respect to the state of Florida. Jurisdiction is not premised upon the Plaintiffs' "fortuitous choices"; BMW AG chose to develop a manufacturing and distribution system that sells into the state of Florida through dealers like Plaintiffs. Thus the reasoning in *Tomas* and *Waite* actually support jurisdiction over BMW AG in this case.

related to the plaintiff's cause of action; (2) involve the defendant's purposeful availment of the privileges of doing business in the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *Louis Vuitton*, 736 F.3d at 1357.

"The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). Although mere knowledge or expectation that a product will wind up in the forum state is insufficient to create personal jurisdiction, the purposeful availment requirement is satisfied upon a showing that the defendant "targeted the forum" state. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011). In the Eleventh Circuit, the "stream of commerce test remains good law" and minimum contacts are likely to exist where, as here, "a high-volume seller puts its products into the stream of commerce knowing those products would end up in the forum state, even if that seller had no other contacts with the forum state." *Smith v. Poly Expert, Inc.*, 186 F. Supp. 3d 1297, 1303 (N.D. Fla. 2016).

BMW AG engages in conduct purposefully directed at Florida. Specifically, BMW AG ships parts and vehicles directly to Florida for distribution and sale to dealers such as Braman through its agent BMW NA. BMW NA has a large distribution center in Jacksonville, and BMW AG ships parts there directly from Germany upon order from Florida dealers, which in turn go to Florida BMW dealers, including Plaintiffs. (Shack Decl. at ¶ 22, Ex. C.) *See also Blitzsafe Texas, LLC v. BMW AG*, CIVIL ACTION NO. 2:17-CV-00418-JRG, 2018 WL 4849345 at *2 (E.D. Tex. Sep. 6, 2018) (noting BMW AG claimed nationwide distribution, finding "BMWAG argues that these facts are not sufficient to subject it to personal jurisdiction within this District as BMWAG does not conduct business in Texas or this District nor has it purposefully directed any activities

at Texas residents. These arguments are unavailing.").

The Complaint also alleges that BMW AG acts in concert with and directs its agent BMW NA, which is in keeping of the understanding of Braman executives. TAC ¶ 82; *see also* Shack Decl., ¶¶ 15-17, Exs. A & B.) These and many other purposeful contacts will clearly establish that the Court may exercise personal jurisdiction over BMW AG.

In addition, as BMW AG's agent under Florida Law, BMW NA specifically sought licensure in Florida and agreed to be bound by Florida law, including Dealer Act provisions conferring jurisdiction over, and imputing liability to, BMW AG.  BMW AG purposefully agreed to market, sell, and distribute its vehicles in Florida through its wholly-owned distributor and agent BMW NA (by building such units for shipment to Florida). BMW AG directly benefits from BMW NA's licensure, as it allows for the sale of tens of thousands of BMW vehicles in Florida. In effect, the Florida statute puts foreign manufacturers on notice that use of a distributor in Florida puts them in the same position as domestic manufacturers like General Motors, Ford and Chrysler.

These facts are similar to or stronger than those in *Brown v. Bottling Grp., LLC*. 159 F. Supp. 3d 1308, 1313-15 (M.D. Fla. 2016), which found sufficient purposeful activity to hale a German company into a Florida District Court. There, a German corporation with a German headquarters, Westfalia, manufactured cranes for sale through Westfalia Technologies, Inc. ("WTI"), its U.S. subsidiary. At the time of the suit, Westfalia had only sold four cranes into Florida. *Id*. at 1313. Westfalia submitted an affidavit with its motion to dismiss that stated that Westfalia had "no employees, no offices, no bank accounts, no telephone listings, and no real property in Florida." *Id*. For its part, WTI was the exclusive distributor of Westfalia's products, but had "no formal corporate connection" between the two companies, and was only a partner from "a marketing perspective." *Id*. WTI took possession of the cranes in Germany, at port. *Id*. at 1313-

10

14.

Despite this, the fact that Westfalia had manufactured to order two cranes at WTI's request, was aware that those cranes were to be installed in Florida, and shipped replacement parts directly to Florida was sufficient to establish "at least minimal commercial contacts with Florida, that those contacts are directly connected to the subject of the instant action, that Westfalia purposefully availed itself of commercial opportunity and activity in Florida, and that Westfalia could reasonably anticipate being haled into a Florida court." *Id*. at 1314-15.

If a German company that ships four items to Florida through a U.S. distributor is subject to suit in Florida for the failure of just one of those items, surely BMW AG is subject to suit in Florida for a case about the very business model that results in tens of thousands of BMWs being sold in Florida. BMW AG has had purposeful activity in this state and should anticipate suit here.

> **3.      The exercise of personal jurisdiction over BMW AG does not offend traditional notions of fair play and substantial justice.**

Finally, the Court must determine whether exercising personal jurisdiction over BMW AG comports with traditional notions of fair play and substantial justice. In this analysis, the court considers: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute. *Louis Vuitton*, 736 F.3d at 1358.

BMW AG cannot meet its burden of making a compelling case that the exercise of jurisdiction would violate "traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267. First, BMW AG asserts that it is merely a bystander to this matter, ignoring the allegations that it directed the excess units be shipped to the U.S. market and that it likely had knowledge and consent of the punching scheme. On this false assertion, BMW AG perfunctorily recites a list of reasons why it would be too burdensome for a "bystander" to be

brought into Florida courts. (*See* BMW AG Br. at 17.) But taking account of the large volume of commerce that BMW AG conducts in Florida, and the benefits and protections that Florida provides (such as access to the courts to protect BMW AG's trademarks, as discussed below), there is no basis to conclude that litigating this action in Florida would be so burdensome to BMW AG as to offend traditional notions of fair play and substantial justice. *See Louis Vuitton*, 736 F.3d at 1358 (noting that the defendant "has not offered any evidence of his finances or any other limitations on him to show that he would be burdened by having to litigate the case in Florida").

Second, "Florida has a strong interest in adjudicating a dispute that involves a Florida corporation and a tort directed into Florida." *Sierra Equity Grp., Inc. v. White Oak Equity Partners*, LLC, 650 F. Supp. 2d 1213, 1227 (S.D. Fla. 2009). Third, Braman has a strong interest in obtaining convenient and effective relief in the judicial district in which it is located. Fourth, the judicial system has a strong interest in resolving this *bona fide* dispute.

Finally, BMW AG has filed numerous suits in the Southern District of Florida as a <u>Plaintiff</u>, usually to enforce its trademark rights—trademarks that are only properly used by licensed and authorized BMW dealers. *See, e.g.*, *BMW of North America, LLC et al v. Jason Athanas*, 0:12-cv-61455-WPD (S.D. Fla. 2012); *Rolls-Royce Motor Cars NA, LLC et al v. Bentley Specialists, Inc., et al*, 9:08-cv-81214-KAM (S.D. Fla. 2009); *BMW of North America, LLC et al v. BelgiumDomains, LLC et al*, 1:07-cv-23 349-AJ (S.D. Fla. 2007); *BMW of North America, LLC, et al v. Highlinewheels Corp.*, 1:04-cv-217 25-UU (S.D. Fla. 2004). BMW AG cannot complain about being haled into a foreign court it so freely and regularly uses to enforce its own rights.

In light of the foregoing, exercising personal jurisdiction over BMW AG will not offend traditional notions of fair play and substantial justice.

## III.  BRAMAN IS ENTITLED TO JURISDICTIONAL DISCOVERY.

Jurisdictional discovery to establish disputed jurisdictional facts "is not entirely

discretionary." *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982). Rather, when a defendant disputes jurisdictional facts by submitting an affidavit or other evidence, the Court looks outside the four corners of the Complaint, and plaintiff must be given the opportunity to conduct jurisdictional discovery to refute that evidence. *See McCullough v. Royal Caribbean Cruises, Ltd.*, Case No. 16-cv-20194-GAYLES, 2017 WL 6372619, at *1 (S.D. Fla. Jan. 11, 2017) (deferring ruling on personal jurisdiction pending completion of jurisdictional discovery). In fact, "Eleventh Circuit precedent indicates that jurisdictional discovery is highly favored before resolving Federal Rule of Civil Procedure 12(b)(2) motions to dismiss for want of personal jurisdiction." *See Sierra Equity Grp., Inc. v. White Oak Equity Partners*, LLC, No. 08-80017-CIV, 2008 WL 1771857, at *1 (S.D. Fla. Apr. 15, 2008).

Here, Plaintiffs have submitted evidence that establishes this Court's personal jurisdiction over BMW AG. However, if the Court has any doubt as to whether Plaintiffs have met their burden in this jurisdictional inquiry, Plaintiffs request in the alternative that the Court defer ruling on BMW AG's Motion to Dismiss for 120 days to allow Plaintiffs the opportunity to conduct jurisdictional discovery and submit a supplemental response to the Motion.[4]

## IV.    BMW AG'S RULE 12(B)(6) MOTION TO DISMISS SHOULD BE DENIED.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only if the plaintiff is unable to articulate facts sufficient to raise a plausible right to relief on the assumption that all of the non-conclusory, factual allegations in the complaint are true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In ruling on a 12(b)(6) motion, the court must limit its consideration to the complaint. *See GSW, Inc. v. Long*

---

[4] Upon review of the Declaration of Andrea Wolfschnaffner (ECF NO. 118-1) which was submitted with BMW AG's Motion to Dismiss, Plaintiffs served discovery requests on BMW AG and BMW NA, which are relevant to establishing facts regarding BMW AG's contacts with Florida. These requests are attached as Appendix A. Jurisdictional discovery depositions would be taken upon receipt of these documents.

*Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993). When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). "The standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Trustees of the ACRA-Local No. 725 Pension Tr. Fund v. Core Admin. Servs., Inc.*, Civil Action No. 15-22720-Civ-Scola, 2015 WL 12564323, at *2 (S.D. Fla. Dec. 22, 2015) (citing *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). Indeed, a complaint must merely provide the defendant with fair notice of the claim and grounds for relief, and does not require detailed factual allegations. *See Gilbert v. Daniels*, 624 Fed. Appx. 716, at *1 (11th Cir. Aug. 28, 2015) (citing *Twombly*, 550 U.S. at 555).

### A.   Braman satisfies the liberal federal pleading requirements by providing BMW AG with fair notice of Braman's claims against it and Braman's grounds for relief.

The allegations in the 179-paragraph Third Amended Complaint provides BMW AG with fair notice of Braman's claims against it and of Braman's grounds for relief, including relief under Florida Dealer Act Section 320.6405. The Third Amended Complaint contains nine counts against "All Defendants," including BMW AG, for violations of various Florida Dealer Act provisions. *See* TAC Counts I-VII, XI. The Third Amended Complaint contains detailed allegations describing how the defendants violated these provisions, including by: (1) fundamentally changing the structure of Braman's business through the Added Value Program (*see id.* ¶¶ 28-66, 96-145, 171-179), (2) pressuring Braman into participating in a coercive "punching" scheme to deceptively inflate BMW's monthly sales figures (*see id.* ¶¶ 67-73, 86-95), and (3) implementing and enforcing the Dealer Effectiveness Metric (*see id.* ¶¶ 74-81, 159-170).

The Third Amended Complaint makes it clear that Braman seeks to hold BMW AG liable

for this unlawful conduct under Florida Dealer Act Section 320.6405. That Section defines a principal-agent relationship between certain manufacturer entities and any entity that distributes vehicles in Florida where, as here, the distribution is on that manufacturer's behalf. Fla. Stat. § 320.6405. The section further provides that the manufacturer-principal is "bound by the terms and provisions of" any franchise agreement its distributor-agent executes and is "subject to all of the restrictions, limitations, remedies, and penalties of [the Florida Dealer Act] related to such franchise agreement, the performance thereof, or any cause of action pertaining thereto." *Id.*

Here, Braman alleges facts about BMW NA's distribution arrangement sufficient to place BMW AG squarely within Section 320.6405. Specifically, Braman alleges that BMW NA "imports and/or purchases BMW vehicles from its ***German corporate parent, BMW AG***, and its affiliate, [BMW MC]" and that "BMW [NA] then sells these vehicles to franchised BMW dealers throughout the United States, including Braman." TAC ¶ 9 (emphasis added). Elsewhere throughout the Third Amended Complaint, Braman alleges that BMW AG is liable for the actions of BMW NA under Section 320.6405. *See id.* ¶¶ 2, 13, 26; *see also id.* ¶¶ 21, 95, 101.

BMW AG contends that Braman fails to state a claim because it has not alleged that BMW NA distributes motor vehicles "by contractual arrangement" with BMW AG, or "pursuant to the direction of" BMW AG, as contemplated by Section 320.6405. But the liberal federal pleading requirements do not require a plaintiff to track the exact language of the statute. *See Marshon v. Fresh Mkt., Inc.*, CASE NO. 16-81609-CIV-MIDDLEBROOKS, 2017 WL 78797, at *4 (S.D. Fla. Jan. 6, 2017) ("[I]t is not necessary for the plaintiff to 'specifically plead every element of a cause of action.'") (quoting *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001)). Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id.*

(internal quotations omitted). The Third Amended Complaint does just that. The allegation that BMW NA purchases vehicles from BMW AG raises a strong inference that BMW NA's distribution of those vehicles is "by contractual arrangement or otherwise pursuant to the direction of" BMW AG, and further creates "a reasonable expectation that discovery will reveal evidence" supporting that inference. *See Trustees*, 2015 WL 12564323, at *2, *3. Also, as discussed in Section I, *supra*, there must be such an agreement or else BMW NA would not be permitted to operate in Florida. *See* F.S.A. § 320.63; Florida DHSMV Form 84256 at *6. And on a motion to dismiss under Rule 12(b)(6)—that is all that matters; BMW AG cannot rely upon its extrinsic affidavit to contest the pleading. The Third Amended Complaint gives BMW AG more than fair notice of the claims against it, and thus satisfies the liberal pleading requirements.

> **B.     Florida Dealer Act Section 320.6405 exposes a motor vehicle manufacturer to direct liability, and BMW AG's argument to the contrary is incorrect.**

Braman states a claim against BMW AG under Section 320.6405 without having to allege any explicit conduct by BMW AG itself that gives rise to a claim. Section 320.6405 makes a manufacturer directly liable for the conduct of an agent that violates the Florida Dealer Act, even if the manufacturer itself engaged in no such conduct. This construction is supported by the statute's text and comports with the Legislature's purpose. BMW AG's alternative construction is unsupported, contradicts the statute's plain meaning, and defies the Florida Dealer Act's purpose.

> **1.     Section 320.6405's plain language dictates that manufacturers are directly liable for the conduct of their agents that violates the Florida Dealer Act.**

Under the plain language of Section 320.6405, BMW AG is directly liable as a matter of law. So, Braman need not allege any unlawful conduct by BMW AG itself to state a claim. A manufacturer that is subject to Section 320.6405, as BMW AG is, "is bound by the terms and provisions of such franchise agreement ***as if it and not the agent had executed the franchise***

*agreement*," and that manufacturer is "subject to all of the restrictions, limitations, remedies, and penalties of ss. 320.60-320.70 related to such franchise agreement, ***the performance thereof, or any cause of action pertaining thereto***." Fla. Stat. § 320.6405 (emphases added).

The statutory language reflects precisely how vicarious liability works. Under Florida law, "[t]he vicariously liable party is responsible to the plaintiff to the same extent as the primary actor; both are jointly liable for all of the harm that the primary actor has caused"—even if the party to be held vicariously liable "has engaged in no wrongful conduct" of its own. *Grobman v. Posey*, 863 So. 2d 1230, 1235 (Fla. Dist. Ct. App. 2003). By binding the manufacturer to the terms of a franchise agreement "as if it and not the agent had executed the franchise agreement," Section 320.6405 dictates that the manufacturer steps into its agent's shoes and becomes subject to the Florida Dealer Act. This is vicarious liability, and thus BMW AG is liable for the unlawful conduct of BMW NA, even if BMW AG engaged in no unlawful conduct of its own.

Section 320.6405's mandate that a manufacturer is subject to the Dealer Act as it relates to the "performance" of or "any cause of action pertaining" to a franchise agreement buttresses this conclusion. Fla. Stat. § 320.6405. The statute specifically contemplates the scenario where the manufacturer's agent executes a franchise agreement with an individual dealer. In this scenario, it is the agent—not the manufacturer—who is party to such a franchise agreement, is responsible for its performance, and is liable for any cause of action pertaining thereto. The manufacturer, in contrast, is not a party to the agreement and therefore lacks any rights or obligations of its own under it. The Florida Dealer Act accordingly steps in and makes the manufacturer vicariously liable as the "principal" for the "performance" of or "any cause of action pertaining" to a franchise agreement signed by its distributor or importer "agent." *Id*.

2.     **BMW AG's construction of Section 320.6405 is unsupported and does not comport with the Florida Dealer Act's purpose.**

BMW AG's construction of Section 320.6405—that is, that it "exposes a manufacturer to liability only for [the manufacturer's] own substantive conduct in violation of the Florida Dealer Act," (BMW AG Br. at 19)—is unsupported by the Florida Dealer Act's text or purpose.

As an initial matter, BMW AG cites no cases supporting the construction it advocates. Instead, BMW AG relies on the *expressio unius* canon to argue that the Legislature's "omission of liability in the absence of conduct by a manufacturing entity" is proof that Section 320.6405 makes manufacturing entities liable for only their own unlawful conduct. BMW AG Br. at 19-20. But that misreads the statute. The text literally puts a manufacturer <u>in the shoes</u> of its agent, the very definition of vicarious liability. It makes the manufacturer responsible for its agent's actions.

And logic supports the latter construction. If a manufacturer engaged in unlawful conduct that harmed an individual dealer, the dealer would have a direct claim and would not need Section 320.6405. In this sense, BMW AG's construction renders Section 320.6405 superfluous. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 166 (2004) (rejecting a reading of a statute that would render part of the statute entirely superfluous—something the Court is "loath to do").

BMW AG's construction does not fit the Florida Dealer Act's purpose. In Sec. 320.6405, the Legislature intended to prevent a manufacturer from using a distributor to insulate itself from liability for wrongdoing wrought against individual dealers. In essence, the statute is designed to place foreign manufacturers on equal footing with domestic manufacturers. Without Section 320.6405, foreign manufacturers and their affiliates would be able to hide safely behind corporate organizational structures, unaccountable to individual dealers that were wronged by them.

In *Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of N. Am., Inc.*, 32 F.3d 528, 533-534 (1994), the Eleventh Circuit recognized the Dealer Act's remedial purpose:

> Both Florida's legislature and courts have spoken concerning the purpose underlying the [Dealer Act]. The Act was promulgated, in part, to ameliorate the abusive tactics and harsh practices automobile manufacturers commonly imposed on their franchisees. *See Mercedes-Benz of North America,* 455 So.2d at 410. The legislature sought to achieve its goal of "protect[ing] the public health, safety, and welfare … by regulating the licensing of … dealers and manufacturers, maintaining competition, providing consumer protection and fair trade and providing minorities with opportunities for full participation as … dealers. Fla. Stat. § 320.605.

***

> **Because the [Dealer Act] is remedial in nature and designed to promote the public good, its provisions should be interpreted broadly to effectuate its purpose.**

The construction of Section 320.6405 that BMW AG advocates does no work to ameliorate, but rather creates the potential for the *exacerbation* of, the "abusive tactics and harsh practices automobile manufacturers commonly imposed on their franchisees." *Id*. That construction does not equalize, but rather *widens* "the conceded difference in bargaining power" between dealers and manufacturers. *J.R. Furlong*, 419 So.2d at 388. Thus, it cannot be the one the Legislature intended.

**<u>CONCLUSION</u>**

Plaintiffs have come forward with abundant evidence to counter BMW AG's Declaration and to vindicate the well-pleaded allegations of the Third Amended Complaint, which must be taken as true. This Court has specific personal jurisdiction over BMW AG and should deny its Motion to Dismiss based upon Federal Rule 12(b)(2). If there is any doubt about jurisdiction, the Court should allow for jurisdictional discovery to take place before ruling.

Further, it is clear from a plain reading of F.S.A. § 320.6405 that a manufacturer that uses a distributor to distribute motor vehicles in the state of Florida is liable for any acts that the distributor undertakes in connection with that scheme of distribution. BMW AG is vicariously liable for the actions of BMW NA, and its Rule 12(b)(6) Motion should be denied.

Dated: March 1, 2019            Respectfully Submitted,

                                 COLSON HICKS EIDSON, P.A.
255 Alhambra Circle
Coral Gables, FL 33134
Tel: (305) 476-7000

By:    *Roberto Martínez*
       Roberto Martínez (Florida Bar # 305596)
       Stephanie A. Casey (Florida Bar # 97483)
       bob@colson.com
       scasey@colson.com

Of Counsel:

Russell P. McRory (*Pro Hac Vice*)
Michael P. McMahan (*Pro Hac Vice*)
Charles A. Gallaer (Florida Bar # 117729)
Arent Fox LLP
1301 Avenue of the Americas, Floor 42
New York, NY 10019
Tel: (212) 484-3900
Fax: (212) 484-3990
russell.mcrory@arentfox.com
michael.mcmahan@arentfox.com
charles.gallaer@arentfox.com

David S. Leibowitz
General Counsel
Braman Management Association
2060 Biscayne Blvd, Second Floor
Miami, FL 33137
davidl@bramanmanagement.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 1, 2019, I served the foregoing document on all counsel of record via email.

*s. Roberto Martínez*
Roberto Martínez
