UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-CV-23360-GAYLES/OTAZO-REYES

**BRAMAN MOTORS, INC., et.al.,**

    **Plaintiffs,**

v.

**BMW OF NORTH AMERICA, LLC, et al.,**

    **Defendants.**

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant Bayerische Motoren Werke Aktiengesellschaft's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim (the "Motion") [ECF No. 129]. The Court has reviewed the Motion, argument of counsel, and the record and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## BACKGROUND

### I. Braman's Franchise Agreement

This action challenges the franchise agreements of one of the most recognized car companies in the world: BMW. Plaintiff Braman Motors, Inc.[1] is a prominent car dealership in South Florida. Braman is a franchisee of BMW of North America, LLC ("BMW NA") and has been the primary purveyor of BMWs in South Florida for many years.

---

[1] Plaintiffs in this action include Braman Motors, Inc. d/b/a Braman BMW; Palm Beach Imports, Inc., d/b/a Braman Motorcars; and the Florida Department of Highway Safety and Motor Vehicles. The Court shall refer to Plaintiffs collectively as "Braman," as Braman has brought this action for itself and in the name of the Florida Department of Highway Safety and Motor Vehicles, for its use and benefit.

Braman sued BMW NA and Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") (collectively, "Defendants") here for making significant changes to BMW's franchise agreement that Braman contends are extortionary, unilateral, and violate both the original franchise agreement and Florida law. The Corrected Third Amended Complaint (the "Complaint") [ECF No. 127] names three specific changes: the addition of an Added Value Program, [*id.* ¶¶ 28–66], BMW's practice of "punching" vehicles that results in Braman purchasing extra cars it claims to neither need nor want, [*id.* ¶¶ 67–73], and BMW's dealer effectiveness metric, a measure for calculating each individual dealer's performance goals that Braman asserts is biased and uses unfair metrics, [*id.* ¶¶ 74–81]. Each of these programs, Braman contends, represents a substantive change to the franchise agreement that was imposed without notice and has resulted in fundamental alterations to the dealer/manufacturer relationship and Braman's business as a whole. Braman alleges these changes caused Braman to lose profits and bonuses to which Braman would have previously been entitled.

## II. BMW AG and BMW NA's Corporate Relationship

BMW AG is a German corporation that manufactures the cars that BMW NA distributes throughout the United States to dealers like Braman.[2] Although some customers place specific orders directly with BMW AG, dealers mostly submit their orders to BMW NA which, in turn, submits them to BMW AG. BMW NA handles all communications with dealers about specific orders. BMW AG then completes the orders and ships the cars to BMW NA, which is then responsible for ensuring the cars reach their final destination in the United States.

---

[2] Both parties submitted affidavits from corporate officers attesting to the relationship between BMW AG and BMW NA. [ECF No. 129-1; ECF No. 130-1]. Braman also submitted evidence obtained in discovery during argument on the Motion, which the Court considered as part of the record.

Although Braman sued both BMW AG and BMW NA, Braman's contract is exclusively with BMW NA. Braman named BMW AG as a defendant because BMW AG is BMW NA's corporate parent and because "many of the decisions and actions described [in the Complaint] have been taken in concert with, and often at the direction of, personnel and officials of BMW AG." [ECF No. 127, ¶ 82]. BMW AG has no offices or personnel in the United States. BMW NA, however, is a Delaware corporation with its principal place of business in New Jersey and with a shipping location in Jacksonville, Florida. BMW NA and BMW AG have their own management teams, their own books of business, and their own financials. Four intermediate corporations separate BMW AG and BMW NA, and BMW AG does not directly own or hold any interest in BMW NA.

### III.   Procedural History

Braman's Complaint asserts eleven counts against both Defendants: Count 1 – violation of the Florida Dealer Act, Fla. Stat. § 320.65(5), (6); Count 2 – violation of the Florida Dealer Act, Fla. Stat. § 320.64(34); Counts 3 and 4 – violations of the Florida Dealer Act, Fla. Stat. § 320.64(42)(a); Count 5 – violation of the Florida Dealer Act, Fla. Stat. § 320.641; Count 6 – violation of the Florida Dealer Act, Fla. Stat. § 320.696(6); Count 7 – violation of the Florida Dealer Act, Fla. Stat. § 320.696(7); Count 10 – violation of the Florida Dealer Act, Fla. Stat. § 320.64(42)(a); and Count 11 – violation of the Florida Dealer Act, Fla. Stat. § 320.641. Braman also separately brings two claims against BMW NA for breach of the Dealer Agreement (Count 8) and breach of the implied covenant of good faith and fair dealing (Count 9). Currently at issue is BMW AG's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim, which is now ripe for review.

## LEGAL STANDARD

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). Complaints must include "properly pleaded facts pertinent to the conduct and activities of the defendant in the forum state[.]" *Borislow v. Canaccord Genuity Grp. Inc., et al.*, No. 14-cv-80134, 2014 WL 12580259, at *4 (S.D. Fla. June 27, 2014) (internal quotation marks omitted) (citing *Elmex Corp. v. Atl. Fed. Sav. & Loan Ass'n of Ft. Lauderdale*, 325 So. 2d 58, 61 (Fla. 4th DCA 1976)); *see also Mcgee v. Cook*, No. 8:09-CV-2543-T-27TGW, 2011 WL 1365024, at *4–5 (M.D. Fla. Apr. 11, 2011) (holding that personal jurisdiction was insufficiently pled where the original complaint contained "insufficient specific allegations of these Defendants' business activities in Florida, their liens on Florida property, or their contracts to provide insurance in Florida"). When a defendant submits evidence in support of its challenge to personal jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *United Techs. Corp.*, 556 F.3d at 1274 (quoting *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff," *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted), and still must "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

A federal court undertakes a two-step inquiry in determining whether personal jurisdiction over a nonresident defendant exists. First, the court must determine whether the exercise of jurisdiction is appropriate under Florida's long-arm statute or another jurisdictional statute. Under Florida law, the long-arm statute is satisfied if the parties can demonstrate that either general or specific jurisdiction exists. *See Dohler S.A. v. Guru*, No. 16-23137-CIV, 2017 WL 4621098, at *3 (S.D. Fla. Oct. 16, 2017). Both parties here agree that personal jurisdiction could only attach through specific jurisdiction. Specific jurisdiction "authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*, 736 F.3d at 1352 (citing *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n. 27 (11th Cir. 2009)).

Second, the court must determine whether personal jurisdiction over the defendant violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). That is, whether the defendant has such minimum contacts with the forum so that exercising personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Id.*

## DISCUSSION

Braman claims that the Court has personal jurisdiction over BMW AG under the Florida Dealer Act, Fla. Stat. § 320.6405 (the "Dealer Act"). In the alternative, Braman contends that personal jurisdiction exists under the Florida long-arm statute, Fla. Stat. §§ 48.193(1)(a)–(d), and that Due Process principles weigh in favor of finding personal jurisdiction over BMW AG. The Court addresses each argument in turn.

**I.    The Florida Dealer Act**

Braman advances a novel argument that BMW AG consented to personal jurisdiction in Florida because the Dealer Act contains a jurisdictional component that allows dealers to sue manufacturers even if they are not "at home" in Florida. BMW AG counters that (1) the Dealer Act is non-jurisdictional and (2) alternatively, Braman has failed to meet its burden to establish a prima facie case of jurisdiction under the statute.

Because this case presents an issue of statutory interpretation, the Court begins its analysis with a review of the plain text of the statute. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997) ("When the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: judicial inquiry is complete.") (citations omitted). Only if the plain text is ambiguous should the Court look to other sources to divine the intent of the legislature in enacting the statue. *Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of N. Am., Inc.*, 32 F.3d 528, 531 (11th Cir. 1994).

The Dealer Act protects Florida car dealers against coercive behavior by manufacturers and/or distributors. Fla. Stat. §§ 320.605, .64; *see also Recovery Racing, LLC v. Maserati N. Am., Inc.*, 261 So. 3d 600, 603 (Fla. 4th DCA 2019) (noting that the Florida legislature intended to protect dealers by regulating licensing, ensuring consumer participation, and maintaining competition). The Dealer Act allows dealers to seek injunctive relief for violations, in addition to other remedies. Fla. Stat. § 320.695 ("[A]ny motor vehicle dealer . . . is authorized to make application to any circuit court of the state for the grant, upon a hearing and for cause shown, or a temporary or permanent injunction or both, restraining any person . . . from violating or continuing to violate any of the provisions of [the Dealer Act]."); *see also id.* §§ 320.695–.70 (describing procedures for civil fines, civil damages, and penalties for violation). Braman asserts that the

Dealer Act extends personal jurisdiction to foreign manufacturers, like BMW AG, based on the contract between its distributor "agent" and the dealer. Fla. Stat. § 320.6405.[3] A distributor is a manufacturer's "agent" for purposes of the Dealer Act if the distributor distributes the manufacturer's cars in Florida under a "contractual arrangement or otherwise pursuant to the direction of the manufacturer." *Id.* In such a case, the manufacturer may be subject to both the franchise agreement and dealer claims relating to the franchise agreement. *Id.*

A plain text reading of the Dealer Act does not support Braman's argument. First and most importantly, the text does not say anything about jurisdiction in Florida. Nowhere does the statute say that manufacturers consent to jurisdiction by manufacturing automobiles that are then sold to Florida dealers through a distributor. *See Knowles v. Beverly Enters.-Fla., Inc.*, 898 So. 2d 1, 7 (Fla. 2004) ("The law is well settled that courts in this state are without power to construe an unambiguous statute in a way which would extend, modify, or *limit,* its express terms or its *reasonable and obvious implications*." (quoting *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984))).

---

[3] The full text of that provision states:

> Any parent . . . of a [ ] distributor . . . which by contractual arrangement or otherwise pursuant to the direction of the manufacturer, engages in the distribution in [Florida] of line-make motor vehicles manufactured or substantially manufactured by such manufacturer, shall be deemed to the be the agent of the manufacturer for the purposes of any franchise agreement entered into between such agent and a motor vehicle dealer engaged in business in [Florida] and shall be bound by the terms and provisions of such franchise agreement as if it were the principal. A manufacturer of line-make motor vehicles which are offered for sale or lease in this state under any franchise agreement executed by an agent of such manufacturer is bound by [the franchise agreement] terms as if it and not the agent had executed the franchise agreement, and [ . . . ] said manufacturer shall be subject to all of the restrictions, limitations, remedies, and penalties of [the Dealer Act] related to such franchise agreement, the performance thereof, or any cause of action pertaining thereto.

Fla. Stat. § 320.6405.

7

And allowing dealers to seek an injunction in Florida does not mean that manufacturers are automatically subject to personal jurisdiction here.[4] *Mike Smith Pontiac, GMC, Inc.*, 32 F.3d at 534 ("Of paramount importance is the statute's common sense reading.").

Moreover, Braman has not alleged that BMW NA has a contractual relationship with BMW AG that establishes BMW NA as BMW AG's agent in Florida or that BMW AG directed BMA NA to distribute cars in Florida. At only one point does the Complaint suggest that BMW NA is an agent of BMW AG, but it does so with no factual support. *See* [ECF No. 129-1, ¶ 4]. Then, in its description of the parties, Braman alleges that BMW AG is the corporate parent of BMW NA—an allegation that may be supported by the record but lacks substantive allegations in the Complaint. *See* [*id.* ¶¶ 8–11 (outlining corporate relationship between Defendants)]. The only substantive allegations in the Complaint relating to BMW AG are that BMW NA's "decisions and actions . . . have been taken in concert with, and often at the direction of, personnel and officials of BMW AG." [ECF No. 127, ¶ 82]. But that paragraph does not specify what decisions or actions, or that the decisions or actions relate to BMW NA's distribution of cars in Florida. Critically, there is neither an allegation of a contract between BMW AG and BMW NA, nor that BMW AG directed

---

[4] Indeed, marked differences appear when comparing statutes that do permit a defendant to be haled into Florida courts to the provisions of the Dealer Act on which Braman relies. *Compare* Fla. Stat. § 320.695 (allowing dealers to seek injunctive relief in Florida) *and* Fla. Stat. § 320.6405 (describing the manufacturer-distributor relationship) *with* Fla. Stat. § 48.193 (stating specifically that "[a]ny person . . . who . . . does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from" certain acts). These differences weaken Braman's assertion that this Court may exercise personal jurisdiction based on a contractual agreement between a distributor and manufacturer, standing alone, without a legal basis. The Florida legislature knew how to write a statute that would confer personal jurisdiction—it did so with the Florida long-arm statute. It did not add Dealer Act provisions to the long-arm statute; nor did the Dealer Act address personal jurisdiction. *See Ela v. Destefano*, 869 F.3d 1198, 1202 (11th Cir. 2017) (finding "persuasive the argument that [w]here [a legislature] knows how to say something but chooses not to, its silence is controlling." (quoting *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015) (internal quotation marks omitted)).

BMW NA to sell cars in Florida. Without such allegations, Braman's Complaint fails to sufficiently plead that BMW NA is an agent of BMW AG.

Accordingly, there is no basis to hold that the Florida Dealer Act conveys personal jurisdiction on BMW AG.

## II. The Florida Long-Arm Statute

Braman's Complaint also fails to establish specific jurisdiction under the Florida long-arm statute, Fla. Stat. § 48.193. The statute provides, in pertinent part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state[;]
>
> 2. Committing a tortious act in this state[;]
>
> . . .
>
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state[; or]
>
> 7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Fla. Stat. §§ 48.193(1)(a)(1)–(2), (6), (7). Braman contends—without citation to the Complaint or any supporting allegations—that jurisdiction is proper under each of these provisions. *See* [ECF No. 30, at 6].

Braman has not alleged in its Complaint that BMW AG committed any of those four actions. BMW AG is referenced only four times in the Complaint: referring to BMW NA as BMW AG's agent [ECF No. 127, ¶ 4], referring to BMW AG as BMW NA's corporate parent, [*id.* ¶ 9], in a conclusory allegation claiming jurisdiction in Florida, [*id.* ¶ 13], and with one paragraph

9

alleging that BMW AG directed "many of" BMW NA's actions, [*id.* ¶ 82]. Nowhere does Braman assert that BMW AG operates a business in Florida, as necessary to establish personal jurisdiction under the "conducting business" prong of the statute, or even what business activities it engages in (if any) within the state. *See* Fla. Stat. § 48.193(1)(a)(1); *see also Dohler*, 2017 WL 4621098, at *4–5 ("To establish that a defendant is 'conducting' or 'carrying on a business' for the purposes of Fla. Stat. § 48.193(1)(a)(1), 'the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit.'"). Any such allegations relate solely to BMW NA.

Further, Braman has not alleged that BMW AG committed a tortious act, caused injury to persons or property, or breached a contract in the state. Instead, the Complaint points to BMW NA as the culprit and, at best, alleges in a conclusory manner that BMW AG knew of or directed "many of" BMW NA's decisions. [ECF No. 127, ¶ 82]. Braman identifies no specific activities of BMW AG that occurred in Florida; nor does Braman assert that BMW AG targeted the Florida market specifically. The general allegation regarding BMW AG's corporate relationship with BMW NA is insufficient for this Court to find that BMW AG has subjected itself to the Court's jurisdiction in Florida.[5] And, importantly, there are no allegations that BMW AG had any direct relationship

---

[5] Braman has not alleged facts that justify disregarding the corporate entity. Although courts sometimes recognize that corporate parents can be held liable for the actions of a subsidiary if the relationship between the two is either a farce or a fraud, "Florida disregards the corporate entity 'in only the most extraordinary cases.'" *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 303 F. Supp. 3d 1282, 1286–87 (M.D. Fla. 2018) (quoting *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994)). Plaintiffs seeking to pierce the corporate veil must allege "(1) that the subsidiary was a 'mere instrumentality' of the parent, *and* (2) that the parent engaged in 'improper conduct' through its organization or use of the subsidiary" such that "the corporation was a mere device or sham to accomplish some ulterior purpose . . . or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998) (quoting *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117 (Fla. 1984)). No such facts are alleged here.

with or caused any injury to Braman.[6] Accordingly, there is no basis to find that personal jurisdiction exists.

## III. Due Process Clause

Even if personal jurisdiction under Florida's long-arm statute were appropriate, Braman's Complaint does not establish sufficient minimum contacts as required by the Due Process Clause. "In specific personal jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts within the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Dohler*, 2017 WL 4621098, at *5 (citing *Louis Vuitton*, 736 F.3d at 1355)).

None of these prongs are met. First, Braman has not alleged that BMW AG has contacts with Florida relating to Braman's claim. *See Dohler*, 2017 WL 4621098, at *5 (noting that the relatedness inquiry focuses on "the direct causal relationship between the defendant, the forum, and the litigation") (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Rather, Braman has alleged that BMW NA has contacts with Florida that relate to Braman's injury. Braman tries to circumvent its lack of specific allegations as to BMW AG by pointing to cases where corporate manufacturers were haled into Florida based on a subsidiary's

---

[6] Even if specific jurisdiction was sufficiently alleged, Braman has not substantiated its jurisdictional allegations. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The Shack declaration merely establishes that BMW AG shipped orders to BMW NA, which then distributed them, and that BMW AG was aware through conversations with BMW NA of certain order specifications from Braman. [ECF No. 130-1, ¶¶ 6, 10, 11, 14–16]. But this is not akin to evidence that BMW AG controlled business practices, orders, or otherwise directed BMW NA's actions in Florida.

actions in the state. But in those cases, there was a plausible allegation of a causal connection—that "but for" the defendant's action in the forum, the plaintiff would not have been injured.[7] *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1315 (11th Cir. 2018) (holding that personal jurisdiction was not proper where "but for" test was not met because the out-of-state defendant's alleged wrongdoing occurred in a different state, the defendant had no connections to Florida, and the plaintiff's choice of Florida as a forum was based solely on his residence at the time of filing). No such allegation exists here. The most Braman has alleged is that "but for" BMW AG's relationship with BMW NA, BMW NA would not have violated the Dealer Act because BMW NA was directed by BMW AG. But that allegation requires an inferential leap from BMW AG's corporate parenthood to BMW NA's actions in Florida, which is not established by Braman's Complaint nor the record evidence produced.

Further, Braman has not alleged that BMW AG purposefully availed itself of this forum. *See Dohler*, 2017 WL 4621098, at *6 (purposeful availment requires courts to examine whether the contacts "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum."

---

[7] For example, in *Advanced Bodycare Sols. LLC v. Thione Int'l, Inc.*, the Court found the requisite causal connection between the defendant, a foreign manufacturer, and the plaintiff, a distributor. 514 F. Supp. 2d 1326 (S.D. Fla. 2007). There, the plaintiff was at home in Florida, and the contract between the parties specified that *all* of the products would be sent to Florida. *Id.* at 1328. The plaintiff discovered that the products were faulty and engaged in negotiations with the defendant to replace them, resulting in new shipments to Florida. *Id.* During this time, the parties also engaged in a marketing plan requiring extensive negotiations in Florida. *Id.* The plaintiff sued over the defective products. *Id.* The Court reasoned that without the defendant's contacts in Florida, no injury would have occurred, and so the "but for" test was satisfied. *Id.* at 1330 (also noting that a manufacturer who sells a product in Florida should foresee being haled into Florida court in the event of disputes "*over the quality of that product*") (emphasis added). No similar allegations exist here.

(quoting *Louis Vuitton*, 736 F.3d at 1357)). Braman's Complaint could be read to allege that BMW AG directed *some* unspecified activities of BMW NA that then occurred—but even then, it does not specifically state the nature of the activities or that BMW AG directed BMW NA to perform them *in Florida*. [ECF No. 127, ¶ 82].

Finally, the Court does not find persuasive Braman's argument that a manufacturer purposefully avails itself of the forum state's market simply by shipping its products to the United States for distribution. *See also* [ECF No. 130, at 14–15 (arguing that the Dealer Act establishes notice that foreign manufacturers purposefully avail themselves of the Florida market when using a distributor)]. In cases where courts have found purposeful availment exists, the plaintiff could point to specific built-to-order products and other contacts, like a contractual relationship, that justified a finding of purposeful availment—facts not alleged here. *See, e.g.*, *Brown v. Bottling Grp., LLC*, 159 F. Supp. 3d 1308, 1315 (M.D. Fla. 2016) (holding that four built-to-order cranes, personal delivery, and a continuing contractual relationship post-delivery justified a finding of purposeful availment sufficient to hale in a foreign manufacturer).

Accordingly, Braman cannot establish that exercising personal jurisdiction over BMW AG would comport with traditional notions of fair play and substantial justice. *See Louis Vuitton*, 736 F.3d at 1358.

* * *

BMW AG's Motion to Dismiss for Lack of Personal Jurisdiction shall therefore be granted. And because the Court finds that personal jurisdiction is not appropriate here, it need not address BMW AG's Motion to Dismiss for Failure to State a Claim.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant BM AG's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**. Defendant BMW AG is dismissed **WITHOUT PREJUDICE**. Accordingly, BMW AG's Motion to Dismiss for Failure to State a Claim is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of September, 2019.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE