## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

BRAMAN MOTORS, INC., *et al.*

        Plaintiffs,

      v.

BMW OF NORTH AMERICA, LLC, *et al.*,

        Defendants.

Civil Action No. 17-cv-23360-DPG

### DEFENDANT BMW NA'S OPPOSITION TO PLAINTIFFS'
### MOTION FOR SANCTIONS AND INCORPORATED MEMORANDUM OF LAW

BMW of North America, LLC ("BMW NA") submits this opposition to Plaintiffs' Motion for Sanctions and Incorporated Memorandum of Law, Dkt. No. 179 (the "Motion for Sanctions").

## I. INTRODUCTION

Braman accuses BMW NA of playing "hide the ball" in discovery by not giving Braman documents that BMW NA located and turned over the U.S. Securities and Exchange Commission ("SEC") in connection with an investigation by that agency into alleged "inaccurate disclosures" of retail sales volume in the United States. Nothing could be further from the truth. Braman requested these documents in its Fourth Request for Production of Documents in January 2020, and BMW NA promptly objected to that request and informed Braman that BMW NA was withholding responsive documents based on those objections. The parties met and conferred on Braman's request and BMW NA's objection in April 2020, and Braman chose not to move to compel; instead, Braman waited until long after fact discovery in this three-year old

case closed on August 17, 2020 to surface this issue. The Court should deny what is, in effect, an untimely motion to compel production of documents.

Moreover, and contrary to Braman's latter-day argument, BMW NA did not violate any obligation to supplement earlier responses to discovery. Over the course of this case, Braman has served requests for over 140 categories of documents. The demand for 77 categories of documents served by Braman in December 2017—particularly with respect to electronically stored information (ESI)—far exceeded the requirement of Fed. R. Civ. P. 26(b)(1) that discovery be "proportional to the needs of the case." Braman also sought to limit the scope of the ESI search that it would be required to conduct to locate documents responsive to BMW NA's document requests. In the summer of 2018, the parties met and conferred on a more modest scope of discovery and agreed that the parties' search for documents would be limited to 16 custodians using agreed electronic search terms. BMW NA complied with that agreement and produced responsive documents, including documents responsive to Braman's First Request No. 24 seeking documents concerning vehicle "punching." BMW NA expressly reserved its objection to conducting a broader search for ESI. It was not required to "supplement" its production with documents located and produced to the SEC two years later in connection with an investigation of issues arising under U.S. securities law—not the Florida dealer statute—in which different lawyers negotiated a different scope of search to find documents in the possession of different custodians using different terms based on the unique considerations of that matter.

## II.     RELEVANT BACKGROUND

### A.     Braman's Coercion Claim.

In December 2017, Braman filed its Complaint against BMW NA.[1]  Only one of its alleged claims (the "Coercion Claim") concerns what Braman calls "punching," or what BMW NA refers to as "Fleet Conversion."[2]  Under the Coercion Claim, Braman alleges it was forced by BMW NA to make certain Fleet Conversions during 2015, and that these alleged acts of coercion violated Florida law (which prohibits certain acts of "coercion" by a motor vehicle manufacturer) and BMW NA's contractual obligations of good faith and fair dealing.[3] Significantly, there is not (and could not be) any claim that merely *incentivizing* Fleet Conversions violates any law or contractual provision; rather, it is only the act of *coercion* relative to Braman that is alleged to be wrongful.[4]

### B.    The Parties' Scope Agreement Concerning Documents Requested

In July 2018, before any party made its first production of documents, BMW NA and Braman began discussions regarding the parameters for ESI searches.  *See* Eggers Decl. ¶ 2.  On July 30, 2018, BMW NA proposed ten BMW NA custodians and, in its email to Braman, grouped these employees into five rough categories of knowledge based on the allegations made

---

[1] Braman has since amended the Complaint three times and a motion to amend for a fourth time is pending.  *See* Dkt. 16, Dkt. 53, Dkt. 127, and Dkt. 163.  The majority of Braman's claims do not relate to Fleet Conversions and are therefore not relevant to this Motion.  *See, e.g.*, Corrected Third Amended Complaint ("CTAC"), ¶¶ 96-145, 159-179.

[2] Every vehicle sold or leased by a BMW dealership must be reported by the dealer to BMW NA by electronically submitting a Retail Delivery Report ("RDR").  Dealers may also move new vehicles from their new vehicle sales inventory into their own fleets and keep them – whether for use as executive (employee) vehicles, service department customer loaners, or demonstrator vehicles.  When a dealer chooses to move a new BMW vehicle out of its inventory and into its own fleet ("Fleet Conversions"), it must also report the move on the RDR submitted to BMW NA.  From time to time, BMW NA provides dealers per-vehicle cash incentives for Fleet Conversions ("Fleet Conversion Incentives").  Dealers, including Braman, may elect whether to undertake these Fleet Conversions and obtain the incentives.

[3] *See, e.g.,* CTAC, ¶ 67 (alleging that "in or about 2015" BMW NA "pressur[ed] and attempt[ed] to coerce dealers" to "punch[ ]" RDRs); ¶ 73 ("In or about the end of 2015, Braman. . . stopped punching unsold vehicles. . . .").

[4] BMW NA denies ever having coerced Braman to do anything, and intends to seek summary judgment on the Coercion Claim, relying in part on the deposition testimony of Braman employees that there was, in fact, no coercion by BMW NA.

in the then-operative Complaint: Southern Region, Automotive Sales, Network Development, Customer Relationship Management, and the Genius program. *Id*. BMW NA also sent Braman organizational charts for the Southern Region, key departments within BMW NA such as Network Development and Automotive Sales, and for senior leadership, so Braman could see for itself where these individuals (and many others) fell within BMW NA's internal organization. *Id.*

On August 1, 2018, the Parties had a conference call to discuss, among other things, the custodians and search terms to be used in collecting and reviewing ESI. Eggers Decl., ¶ 3. During the call, Braman requested that BMW NA search the ESI of six additional custodians, to which BMW NA agreed.[5] *Id*. The Parties agreed during the call to exchange lists of proposed search terms. BMW NA forwarded its list shortly after the call ended and asked Braman to provide their list of proposed custodians, organization chart(s), and search terms. *Id*. Braman provided its proposed list of search terms that afternoon. *Id*. On August 7, 2018, Braman confirmed the Parties' agreement regarding the identities of the BMW NA custodians to be searched. *Id.*

During July, August, and into September 2018, the Parties exchanged, revised, and communicated at length about the search terms to be applied to the collected documents (together with custodians, the "Scope Agreement"). *See* Eggers Decl., ¶ 4. The Parties agreed that no search for any electronically stored information ("ESI"), such as emails, would be required or undertaken beyond the agreed-upon search terms and custodians. *Id*. At no time after the parties established the Scope Agreement did Braman request that BMW NA search

---

[5] Further correspondence between the Parties clarified that Braman sought the addition of five additional custodians, not six. Eggers Decl., ¶ 3.

additional custodians, modify the search terms, or otherwise modify the agreed-upon Scope Agreement. *Id*., ¶ 5.

### C.   BMW NA Objected to Producing Fleet Conversion Documents Outside the Scope Agreement and Braman Did Not Move to Compel

On December 22, 2017, Braman served its First Request for Production of Documents, which sought, among other things, certain Fleet Conversion-related documents:

> **REQUEST NO. 24**: All documents, communications, and studies related to dealers "punching" RDRs for BMW vehicles at each month's end or any other time, including, but not limited to: (i) BMW's communications to dealers regarding purchasing such vehicles and punching; (ii) any request by BMW to any of its dealers to punch vehicles prior to their actual retail sale; (iii) the number of new BMW vehicles in BMW's inventories at all United States ports and distribution centers, by vehicle model, by year; (iv) BMW's payments or monetary incentives to dealers based on the number of vehicles purchased and/or punched by each dealer; (v) any positive or adverse action BMW took against a dealer because a dealer did or did not accept and/or punch vehicles; (vi) any adverse consequences suffered by a dealer for not punching vehicles prior to their actual retail sale; (vii) the effects, if any, punching vehicles has on BMW's sales, sales reporting, revenue, and profitability; and (viii) documents by, from and between BMW AG, BMW (US) Holding, and BMW relating to or concerning such month-end inventories and monetary incentives offered to BMW dealers to reduce BMW port and distribution center inventories by such month end purchases.

Braman's First Request for the Production of Documents (Dkt. 179-2) at 14.

In BMW NA's Responses to Braman's First Request for Production of Documents, BMW NA noted that it would "conduct a reasonably diligent search for [Electronically Stored Information ('ESI')] responsive to [these] Requests, subject to any mutually agreed search protocol or such search protocol as the Court may require if the parties cannot agree on the scope of such search." Eggers Decl., ¶ 6, Ex. A (BMW NA's Responses to Braman's First Request for Production of Documents) at 2.

BMW NA objected to Request No. 24, among others, and the Parties engaged in a series of communications, including telephonic meet and confer calls, and reached agreement on the

majority of disputed Requests and Responses/Objections.   Eggers Decl., ¶ 7.   As discussed above, during the course of the Parties' meet and confer discussions, they agreed on the terms of the Scope Agreement.  *Id.*, ¶¶ 3-4.  Even after those negotiations, BMW NA expressly reserved its objection to any broader search for ESI and indicated that the scope of its production would be limited to the ESI search that had been negotiated by the parties:

> BMW NA objects to the Requests to the extent they purport to require BMW NA to provide discovery of [ESI] from sources that are not reasonably accessible because of undue burden and cost, or that are not proportional to the needs of the case.  BMW NA will conduct a reasonably diligent search for ESI responsive to [the] Requests, subject to mutually agreed-upon search terms applied to the ESI of mutually agreed-upon custodians.

BMW NA's Third Amended Responses to Plaintiffs' Request for Production of Documents (Dkt. 179-3) at 2.

BMW NA's Response to Request No. 24, as limited by the Parties' Scope Agreement, further limited the documents BMW NA agreed to produce:

> **RESPONSE TO REQUEST NO. 24**: BMW NA objects to this Request to the extent it seeks competitively-sensitive information or data concerning other BMW dealers, none of which is relevant to any claim or defense in this case. BMW NA is withholding documents and communications concerning individual payments made to other BMW dealers for "punching" vehicle and communications with dealers other than Braman concerning "punching" unless those communications were part of blast emails sent by national or regional teams to all dealers in a specific geographic area.  Subject to the foregoing objections, BMW NA will produce non-privileged documents responsive to this Request.

*See id.* at 11-12.  Braman did not move to compel based on BMW NA's response.

Applying the search terms and custodial files specified by the Scope Agreement, BMW NA conducted a reasonably diligent search for all documents responsive to this Request, and produced all non-privileged documents yielded by that search, other than those identified as having been withheld.  Eggers Decl., ¶ 8.

On January 17, 2020, Braman served its Fourth Request for Production of Documents on

BMW NA.  Request No. 21 sought:

> **REQUEST NO. 21**: Documents sufficient to identify the person or persons responsible for devising or authorizing BMW NA's month-end incentive or "punching" programs, and each such authorization for each such program for the period of 2012-2016.

Braman's Fourth Request for the Production of Documents (Dkt. 179-4) at 8.

BMW NA objected to Braman's Fourth Request for the Production of Documents to the

extent Braman sought documents outside of the Scope Agreement:

> BMW NA objects to the Requests to the extent they purport to require BMW NA to provide discovery of electronically stored information ("ESI") from sources that are not reasonably accessible because of undue burden and cost, that are not proportional to the needs of the case, <u>or that require BMW NA to conduct a search for ESI using terms or custodians other than those mutually agreed upon prior to the start of discovery</u>.  BMW NA will conduct a reasonably diligent search for ESI responsive to this Requests, subject to those mutually agreed- upon search terms applied to the ESI of those mutually agreed-upon custodians.

BMW NA's Response to Braman's Fourth Requests for the Production of Documents (Dkt. 179-

5) at 2 (emphasis added).

BMW NA reiterated its objection to searching for documents beyond the agreed-upon

parameters of the Scope Agreement:

> **RESPONSE TO REQUEST NO. 21**: <u>BMW NA objects to this request to the extent it seeks electronically stored information that was not collected using the search terms and custodians the Parties agreed to use after extensive discussions</u>. BMW NA further objects to this request as duplicative of Request No. 24 in Plaintiff's First Request for Production of Documents. Pursuant to that request, BMW NA agreed to and has produced documents, communications, and studies "related" to dealers "punching" RDRs for BMW vehicles at each month's end or any other time, including, but not limited to documents relating to or concerning such month-end inventories and monetary incentives offered to BMW dealers.
>
> Subject to its objections, BMW NA states that is has already searched for and produced documents responsive to this request.

Response of BMW NA to Braman's Fourth Request for the Production of Documents (Dkt. 179-5) at 14-15 9 (emphasis added).

Applying the search terms and custodial files specified by the Scope Agreement, BMW NA conducted a reasonably diligent search for all documents responsive to this Request, and produced all non-privileged documents yielded by that search, other than those identified as having been withheld. Eggers Decl., ¶ 8. Braman did not move to compel based on BMW NA's Response.

### D. BMW NA Objected to Producing SEC Documents and Plaintiffs Did Not Move to Compel

In December 2019, the SEC initiated an investigation (the "SEC Investigation") into purported "inaccurate disclosures by BMW . . . of its retail vehicle sales volume in the United States." *See* SEC Order (Dkt. 179-1). In responding to the SEC's document requests, BMW NA negotiated with the SEC to establish the custodians and search terms BMW NA would apply in searching for and producing documents. *See* Eggers Decl., ¶ 9. Those custodians and search terms applied by BMW NA to the SEC's requests were significantly broader than those specified by the Scope Agreement. *Id.* The search protocol used in the SEC matter involved the search and review of the files of over 50 custodians from BMW NA, BMW AG, and BMW US Capital. *Id.*

As part of its Fourth Requests for the Production of Documents, served in January 2020, Braman sought:

> **REQUEST NO. 50**: All documents provided to, communicating with, or discussing the SEC in connection with its investigation into BMW and its punching practices, as announcing in the Wall Street Journal on December 24, 2019.

Braman's Fourth Request for the Production of Documents (Dkt. 179-4) at 14. In its Responses and Objections to Braman's Fourth Request for the Production of Documents, served on April 3,

2020, BMW NA objected to the Requests "to the extent they purport to . . . require BMW NA to conduct a search for ESI using terms or custodians other than those mutually agreed upon prior to the start of discovery."   BMW NA's Response to Braman's Fourth Requests for the Production of Documents (Dkt. 179-5) at 2. BMW NA also objected to the Request and expressly stated that it was withholding documents based on its objection:

> **RESPONSE TO REQUEST NO. 50**: BMW NA objects to this request because it is overly-broad and seeks documents not relevant to any claim or defense in this case. BMW NA further objects to this request because it seeks highly confidential, competitively-sensitive information about other BMW dealers across the entire BMW network. BMW NA also objects to this request because it does not describe with reasonable particularity the documents to be produced. Rather, it simply requests "all documents" that touch upon the SEC investigation, regardless of their content, time frame, or other characteristics.
>
> BMW NA is withholding documents based on its objections.

Response of BMW NA to Braman's Fourth Request for the Production of Documents (Dkt. 179-5) at 28.[6]  During the Parties' April 29, 2020 meet and confer regarding, among other Requests, Request No. 50, BMW NA reiterated its objections to producing "all documents provided to, communicating with, or discussing" the SEC matter and stated that BMW NA would stand on its objection.  *See* Eggers Decl., ¶ 10.  Braman did not move to compel based on BMW NA's objection.

### E.    BMW NA's Interrogatory Response Regarding Fleet Conversion Was Complete and Braman Did Not Move to Compel

On June 17, 2020, Braman served interrogatories on BMW NA, and requested:

**INTERROGATORY NO. 8**: Explain in detail how BMWNA determined Punching incentives, including timing, dollar amounts, quantity and models of vehicles, and identify the person or persons who created, invented, or authorized Punching incentives.

---

[6] The Response was also subject to BMW NA's objection that BMW NA conduct "a search for ESI using terms or custodians other than those mutually agreed upon prior to the start of discovery."  *See supra* at 8.

Braman's First Set of Interrogatories to BMW NA (Dkt. 179-6) at 7.  BMW NA objected to this

Interrogatory and referred Braman to the Rule 30(b)(6) testimony of Peter Buchauer:

> **RESPONSE**: Pursuant to Fed. R. Civ. P. 26(b)(2)(C)(i), BMW NA objects to this Interrogatory on grounds that the information sought can be obtained from some other source that is more convenient, such as through deposition testimony, including testimony in response to Topic 14 of plaintiffs' Rule 30(b)(6) deposition notice. Topic 14 seeks testimony regarding "[t]he precise manner in which each "punching" program was chosen to be introduced, including but not limited to the process and procedure for selecting and authorizing the models and amount of bonuses, and the person or persons whose approval or authority was required before each punching program was introduced."  Pursuant to Fed. R. Civ. P. 26(b)(2)(C)(i), BMW NA refers plaintiffs to the Rule 30(b)(6) deposition testimony of Peter Buchauer.

BMW NA's Responses and Objections to Braman's Interrogatories (Dkt. 179-7) at 10.

Mr. Buchauer was deposed on August 17, 2020.  Eggers Decl., ¶ 12.  At no time during

Mr. Buchauer's deposition or afterward did Braman claim that Mr. Buchauer was not prepared to

address Topic No. 14, seek additional testimony or demand a further narrative response, or

otherwise seek to meet and confer with BMW NA concerning its response to Interrogatory No.

8.  *Id.*., ¶¶ 12-13.

## III.   ARGUMENT

### A.   Braman's Motion for Sanctions Is Actually an Untimely Motion To Compel Production of Documents and Interrogatory Responses After the Close of Discovery.

Braman's sanctions motion should be denied because it is actually an untimely motion to

compel.  *See, e.g., Smith v. Royal Caribbean Cruises, Ltd.*, 302 F.R.D. 688, 694 (S.D. Fla. 2014)

("Plaintiff was entitled to obtain Rule 37 relief if Defendant failed to comply with its discovery

obligations . . . . But Plaintiff was required to seek that relief prior to the end of the discovery

period.").  Braman seeks sanctions against BMW NA for failing to produce documents

responsive to Request No. 24 to Braman's First Request for Production of Documents dated

December 22, 2017; Request Nos. 21 and 50 to Braman's Fourth Request for Production of

Documents dated January 17, 2020; and Interrogatory No. 8 to Braman's First Set of Interrogatories dated July 17, 2020, but Braman never moved to compel production of any of the material.

With respect to Request No. 24 to Braman's First Request for Production of Documents, the Parties met and conferred in the summer of 2018 and agreed to a scope of search for responsive documents; based on that search, BMW NA has produced over 55,000 documents, including more than 10,000 native files (such as Excel files), totaling more than 250,000 pages. Eggers Decl., ¶ 14.  With respect to Request Nos. 21 and 50 to Braman's Fourth Request for Production of Documents, BMW NA timely objected to these requests and the parties met and conferred concerning those objections on April 29, 2020; Braman chose not to file a motion to compel.  With respect to Interrogatory No. 8, BMW NA timely served its response on August 17, 2020 (the last day of discovery) and Braman never raised any issue with that response.  *Id*., ¶ 13.

Braman waived any argument that BMW NA breached its discovery obligations by failing to present these issues to the Court within thirty days after BMW NA served its responses. *See* S.D. Fla. Local R. 26.1(g)(1); *see also Smith*, 302 F.R.D. at 694; *Zuniga v. Russel S. Jacobs, P.A.*, 2019 WL 8362164, at *2 (S.D. Fla. 2019) ("Here, Plaintiffs' motion lacks merit because the deadline to seek relief has long since passed."); *Lara v. G&E Florida Contractors, LLC*, 2016 WL 8740318, at *2 (S.D. Fla. 2016) (denying request for Rule 37 sanctions as untimely for failure to comply with Local Rule 26.1); *Keller v. Wells Fargo Bank N.A.*, 2014 WL 12461355, *1 (S.D. Fla. 2014) (denying motion to compel as untimely under Local Rule 26.1).[7] Nor can Braman show "good cause" for its failure to present this issue to the Court in a timely

---

[7] In *Manno v. Healthcare Revenue Recovery Group, LLC*, 2012 WL 1409532, at *3 (S.D. Fla. 2012), the court explained that Local Rule 26.1(h)(1) "sets forth a specific period within which discovery motions must be filed.  Defining that period as 'thirty days' rather than ... the less precise 'a reasonable time' reflects the judgment of the District that the filing period should not extend beyond thirty days. Thus, the Rule has the benefit of making clear precisely when discovery motions must be filed."

fashion.  Braman knew about the SEC investigation and referenced that investigation in Request No. 24 of its Fourth Request for Documents served in January 2020, and it knew by early April 2020 that BMW NA was withholding documents that it had produced to the SEC.  The SEC Order issued on September 24, 2020 merely confirmed that BMW NA produced documents to the SEC that were not responsive to the agreed, narrower scope of search in this case.  For this reason alone, the Court could deny Braman's sanctions motion.

**B.    BMW NA Did Not Violate Rule 26(e) and Sanctions Are Not Permitted Under Rule 37(c).**

**1.    BMW NA's Responses Were Not "Incomplete or Incorrect."**

Over the course of more than two years of fact discovery, BMW NA has collected, reviewed, and produced thousands of documents based on the Parties' agreed-upon Scope Agreement and the parameters BMW NA clearly articulated in its (unchallenged) objections and responses to Braman's requests for the production of documents.  *See* Eggers Decl., ¶ 14. Braman erroneously claims that BMW NA is obligated to produce documents that fall outside the Scope Agreement, as well as those that BMW NA expressly stated it would not produce (*i.e.*, Request No. 50).  No such burden exists under Federal Rule of Civil Procedure 26(e), which provides:

> (e)  SUPPLEMENTING DISCLOSURES AND RESPONSES.
>
> (1)  *In General.*  A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>>
>> (B) as ordered by the court.

Rule 26(e) does not call for blanket supplementation based on a requesting party's unilateral claim that relevant documents exist that were not produced. The time for argument over scope of search and production has passed. Now, long after the deadline for fact discovery and motions to compel has lapsed, the only question is whether the subject responses were *incomplete or incorrect* in some material respect.[8] That is not the case here.

BMW NA objected to the scope of the Fleet Conversion documents requested in First Request No. 24 and Fourth Request No. 21, both in terms of topical scope and to the extent the Requests sought documents from custodians and using search terms other than those agreed-upon by the Parties in the Scope Agreement. The search protocol used in the SEC matter included more than three times the number of custodians as in the Braman matter and searched a significantly broader pool of documents. *See* Eggers Decl., ¶¶ 3, 9. That BMW NA collected and produced different documents to the SEC than it did to Braman based on a different scope, different search terms, and different custodians does not now render BMW NA's responses or its productions incomplete. That is particularly the case where, as here, Braman specifically requested BMW NA's productions to the SEC, BMW NA objected, and Braman took no further action to compel production.[9] *See Vay v. Huston*, 2016 WL 1408116, at *8 (W.D. Pa. 2016)

---

[8] Under Federal Rule of Civil Procedure 37(c)(1), "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. . . ." For the reasons discussed above, BMW NA's alleged failure to produce the documents cited in the SEC Order is substantially justified by its objections to relevant document requests and Braman's decision not to move to compel based on those responses. Even assuming error on BMW NA's part (which there was none), the error was harmless because the documents quoted in the SEC Order do not pertain to alleged coercion by BMW NA of Braman to accept Fleet Conversion Incentives. *See infra* at 13-14.

[9] Among other objections to Request No. 50, BMW NA objected that the request did not describe with reasonable particularity the documents to be produced. *See* Fourth Request for the Production of Documents (Dkt. 176-6) at 28. This type of "cloned" or "piggyback" discovery has been held impermissible by District Courts in the Eleventh Circuit. *See, e.g., Strickland v. Tristar Prod., Inc.*, 2017 WL 2874621, at *1 (S.D. Ga. July 5, 2017) (denying plaintiff's motion to compel discovery of "all

(holding that under Rule 26(e) plaintiff was only required to supplement or correct response if the response was incomplete or incorrect and that "[w]hile Defendant contends that Plaintiff's responses to its request for production were incomplete, Plaintiff had asserted objections," and thus "[g]iven Plaintiff's objections, Defendant was required to meet and confer and then move to compel production") (internal citations omitted)).

Braman argues that BMW NA should not be permitted to rely on a "years-old agreement about ineffective custodians and search terms [made] at the outset of discovery" (Mot. at 17), but there was no subterfuge or attempt on BMW NA's part to obscure its reliance on the Scope Agreement.   BMW NA's responses to Braman's document requests objected to the requests to the extent they sought the collection and review of documents from custodians other than those agreed upon by the Parties at the outset.   BMW NA reiterated its position during meet and confirm meetings with Braman.  *See, e.g.*, Eggers Decl., ¶ 10.  At no point did Braman seek to compel a broader search or to add additional custodians to the Scope Agreement.  *Id.*, ¶ 5.

Braman's reliance on *In re Delta* as "instructive," is misplaced.  *See* Mot. at 17-18 (citing *In re Delta/AirTran Baggage Fee Anti. Litig.*, 846 F. Supp. 2d 1335, 1348-49 (N.D. Ga. 2012). The court's decision to sanction Delta for its failure to produce 60,000 documents it had separately produced to the Department of Justice was based on multiple factual circumstances not present here.  For example, the court found that Delta had "neglected to search and produce responsive documents" from collected hard drives; that Delta had located additional back-up tapes containing emails after the close of discovery, but did not review and produce the responsive emails; and that prior to the discovery of the 60,000 documents Delta had

---

documents" produced by party in similar products liability cases, "regardless of the pertinence of those materials" because plaintiff must identify the materials more specifically than "all") (citing Fed. R. Civ. P. 34(b)(1)(A) (requiring "reasonable particularity" in document requests)).

unequivocally "represented to the Court approximately twenty times that it had produced every document responsive to [Delta's] discovery requests that it had in its possession" and yet failed to correct its factual misrepresentations to the Court. *In re Delta*, 846 F. Supp. 2d at 1348-49. None of the factual circumstances underlying the Court's decision in *In re Delta* to impose sanctions are present here.

**2.      Fleet Conversion Motive Documents Are Not Material in this Case.**

Not only does Braman's motion for sanctions fail because BMW NA's Responses were not incomplete or inaccurate, it fails for the independent reason that the documents are immaterial to the resolution of this case. *See* Fed. R. C. P. 26(e)(1)(A). The documents quoted in the SEC Order concern the motivation for offering incentives for Fleet Conversions. Those motives are immaterial to the resolution of Braman's claims, which are based entirely on Braman's having been supposedly coerced to make Fleet Conversions. *See supra* at 13-14. If BMW NA engaged in unlawful coercion under Florida law (which it did not), BMW NA will be liable, irrespective of its motive. Conversely, if BMW NA did not coerce Braman, there can be no violation of Sections 320.64(5) and (6) or liability under Braman's common law claims.

**C.      There is No Basis for Braman's Motion Because BMW NA Has Not Violated the Law or a Court Order.**

For all of Braman's rhetorical flourishes, the history of discovery in this case shows there was no wrongful conduct by BMW NA. BMW NA objected to producing certain Fleet Conversion-related documents–including the very documents cited in the SEC Order–and Plaintiff's did not seek to compel their production. Braman cites no authority for the proposition that the Court can sanction BMW NA in the absence of wrongful conduct, and violation of an order compelling discovery is generally a necessary predicate to awarding sanctions under Rule 37. *See United States v. Certain Real Prop.*, 126 F.3d 1314, 1317-1318 (11th Cir. 1997); *see*

*also Martin v. Northwestern Mut. Life Ins. Co.*, 2006 WL 148991, *2, n.3 (M.D. Fla. 2006) (noting that the Eleventh Circuit has refused to apply Rule 37 for discovery violations absent violation of an order). Because Braman has never moved to compel on any of the discovery failures they allege in the Motion, it does not (and cannot) argue that BMW NA has violated a court order compelling it to produce documents over the stated objections in its document responses.[10] On this basis alone, Braman's sanctions motion should be denied.

As described above, BMW NA has fully complied with its discovery obligations. Over the course of more than two years of fact discovery, BMW NA has collected, reviewed, and produced thousands of documents based on the Parties' agreed-upon Scope Agreement and the parameters BMW NA clearly articulated in its (unchallenged) objections and responses to

---

[10] The cases Braman cites in support of its Motion are distinguishable on numerous grounds, but notably because in almost all of the cases cited, the sanctioned party violated a court order, a fact not present here. *See, e.g., Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 698-99 (1982) (Rule 37 sanction imposed after party failed to comply with three court orders to produce documents); *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1305-306 (11th Cir. 2020) (imposing sanctions for violation of multiple court orders); *Oklahoma Fed. Gold and Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 138 (10th Cir. 1994) (sanction imposed after violation of two court orders, refusal of party to appear for deposition, and refusal to respond to written discovery); *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1046 (11th Cir. 1994) (affirming imposition of sanctions for "failure to comply with a discovery order"); *Coquina Invs. v. Rothstein*, 2012 WL 3202273, *13 (S.D. Fla. 2012) (sanction entered for "pattern of discovery violations" related to documents produced mid-trial in violation of court order and after repeated representations to court that party had produced all responsive documents); *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1356, 1541 (11th Cir. 1993) (imposing sanctions for violation of three discovery orders); *Carluccis v. Piper Aircraft Corp., Inc.*, 775 F.2d 1440, 1448 (11th Cir. 1985) (finding bad faith where, *inter alia*, counsel terminated document production on basis of asserted objections already overruled by court and violated direct order of court to continue deposition until completion); *Immuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D. 561, 569-71 (S.D. Fla. 2001) (imposing sanction for violation of discovery orders). Other cases are simply inapposite to the facts and circumstances here. *See, e.g., Flurry v. Daimler Chrysler Corp.*, 427 F.3d 939, 934 (ordering sanction of dismissal where plaintiff sent allegedly defective vehicle in a crashworthiness case, "the most crucial and reliable evidence available," to salvage despite requests from defendant for vehicle's location); *Eagle Hosp. Physicians*, 561 F.3d at 1306-307 (11th Cir. 2009) (sanction imposed for "egregious" conduct of intercepting communications between clients and attorneys); *De Saro v. United States*, 305 F. Supp. 2d 1330 (S.D. Fla. 2004) (imposing sanction for refusal to appear at deposition).

Braman's requests for the production of documents.[11]  *See* Eggers Decl. ¶ 14.  That BMW NA made document productions under broader ESI parameters in the SEC matter does not retroactively render BMW NA's responses incomplete or incorrect; nor does it lead to any conclusion that BMW NA ever acted in bad faith.  *See* Mot. at 12.

In a tacit admission that discovery sanctions are not warranted under Rules 26(e) and 37(c)(1), Braman instead urges the Court to order extreme sanctions under its "inherent powers." Mot. at 8-16.  But as Braman's own Motion acknowledges, "[i]nvoking a court's inherent powers requires a determination that a party acted in bad faith."[12]  Mot. at 8 (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc*., 561 F.3d 1298, 1306 (11th Cir. 2009)).  "Because of their very potency, inherent powers must be exercised with restraint and discretion."  *Chambers*, 501 U.S. at 44; *see Schwarz v. Villages Charter Sch., Inc.*, 2017 WL 88951, at *3 (M.D. Fla. 2017) ("the Supreme Court has stressed that a court should 'exercise caution in invoking its inherent powers'") (quoting *Chambers*, 501 U.S. at 50).  The bar is very high: a "district court may exercise its inherent sanction power where a party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Bldg. Materials Corp. of Am. v. Henkel Corp.*, 2017 WL 4082440, at *2 (M.D. Fla. 2017) (quoting *Purchasing Power*, 851 F.3d at 1223 (11th Cir. 2017)).  As discussed above, no such conduct is present here.

---

[11] Braman argues that it "had no choice but to rely on BMWNA to identify the appropriate custodians for the range of issues and matters presented in the case" and that BMW NA's "decision-making process regarding custodians was never revealed to Braman."  Mot. at 16.  Apart from the undisputed fact that Braman has been part of the BMW dealer network for decades and can be presumed to be familiar with BMW personnel, Braman apparently forgets that counsel for BMW NA sent an email to Braman proposing specific custodians, but area of knowledge, and sent organizational charts so Braman could review where the proposed individuals (and others, should Braman have wanted to propose additional custodians) fell within BMW NA's internal organization.  *See* Eggers Decl., ¶ 2.

[12] In a number of the cases Braman cites in support of its argument that the Court should order sanctions under its inherent powers the court actually did not order sanctions.  *See, e.g., Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1227 (11th Cir. 2017) ("We reverse the district court's imposition of sanctions. . . No party in this case acted with bad intentions. . . .").

Braman urges the court to conclude that BMW NA acted in bad faith by doing exactly what BMW NA told Braman it was doing:  objecting to certain requests and refusing to produce certain of the Fleet Conversion documents, including "all" documents produced to the SEC. Braman relies on the dissimilar circumstances of *Serra Chevrolet*, in which the district court— after repeatedly ordering a manufacturer to produce documents—rejected defendant's explanation for its failure to produce documents *the court had previously ordered it to produce* and imposed sanctions.  *See* Mot. at 12-13 (citing *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1150 (11th Cir. 2006).  But in that case, the plaintiff dealer filed a motion to compel discovery, and it was only after the district court entered its discovery order requiring the manufacturer to produce documents and the manufacturer failed to comply with that order (and succeeding orders requiring production) that the district court imposed sanctions. *Id*. at 1143.  If anything, the *Serra Chevrolet* case cautions against the Court entering an order imposing the draconian sanctions that Braman now seeks; the Eleventh Circuit on appeal held that the district court in *Serra Chevrolet* abused its discretion by imposing a hefty monetary fine and striking defenses because the record presented by the plaintiff failed to support those sanctions.  *Id*. at 1151-52.  Here, Braman has failed to offer *any* record evidence supporting the sanctions it seeks—not even the paltry record found deficient in *Serra Chevrolet*.

**C.      Braman Is Not Entitled to the Proposed Sanctions and No Extension of the Discovery Schedule is Warranted.**

Braman requests three of the harshest sanctions available under Rule 37: termination of BMW NA's counterclaim; an order prohibiting BMW NA from opposing Counts I, VIII and IX of Braman's Corrected Third Amended Complaint (in effect, a directed verdict); and an order adopting the Corrected Third Amended Complaint's assertions concerning Fleet Conversions as fact. *See* Mot. at 19-20. All of these sanctions are inappropriate here.

Braman's request that the Court impose the most severe sanction—dismissal of BMW NA's counterclaim—is "disfavored and . . . and rarely imposed, and then only where one party willfully, and in bad faith, fails to obey the court's discovery orders such that allowing the case to proceed would be unfair to the innocent party." *Schwarz*, 2017 WL 88951, at *3. The Eleventh Circuit has "consistently . . . found Rule 37 sanctions such as dismissal or entry of default judgment to be appropriate . . . only 'where the party's conduct amounts to flagrant disregard and willful disobedience of discovery orders.'" *Certain Real Prop.*, 126 F.3d at 1317 (quoting *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)) (collecting cases supporting proposition that party must violate one or more discovery orders before court may enter default or dismiss case under Rule 37)). As discussed at length above, no such willful violation of a court order has occurred here. Because Braman has not previously complained about BMW NA's compliance with this Court's discovery orders, the Court has not had occasion to establish that "the most drastic sanction of default judgment was a possibility."[13] *Schwarz*, 2017 WL 88951, at *6.

---

[13] There is no connection between the documents quoted in the SEC Order and BMW NA's Counterclaim, further highlighting the inappropriateness of the request. BMW NA's counterclaim asserts a breach of Plaintiff Braman BMW of Miami's dealer agreement based on poor sales performance and has no tie to Fleet Conversion or Fleet Conversion Incentives.

Braman also requests that BMW NA be precluded from opposing Counts I, VIII and IX of Braman's Corrected Third Amended Complaint, and that facts relating to Braman's Fleet Conversion allegations be ordered as "fact" by the Court.  *See* Mot. at 14, 19.  Again, such drastic sanctions would be tantamount to a default judgment against BMW NA on these claims, an unwarranted sanction under the circumstances of this case.[14]  *See United States v. Hayden*, 2011 WL 13131320, at *1 (S.D. Fla. 2011) ("Generally, 'the district court should impose the least severe sanction necessary to ensure prompt and complete compliance with its discovery orders.'" (quoting *United States v. Parks*, 399 F. App'x. 446, 456-57 (11th Cir. 2010)); *Platypus Wear, Inc. v. Clarke Modet & Co.*, 2008 WL 11401783, at *2 (S.D. Fla. 2008) (noting court should impose least onerous sanction to meet the purposes of imposing the sanction and that "[t]he severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders").

Finally, Braman argues that it should be entitled to re-open discovery to seek "documents, statements and submissions provided to the SEC," as well as time to depose various unidentified BMW NA witnesses in connection with the SEC Documents. Mot. at 20.  Braman's request is an unreasonable and unjustified delay of a case that has been pending for over three years.  In addition to the documents collected and produced by BMW NA, Braman has already had the opportunity to conduct several depositions concerning their Fleet Conversion allegations, including a Rule 30(b)(6) deposition that specifically covered the topic of "[t]he precise manner in which each 'punching' program was chosen to be introduced, including but not limited to the process and procedure for selecting and authorizing the models and amount of bonuses, and the

---

[14] *See, e.g., Myrdal v. District of Columbia*, 248 F.R.D. 315, 318 (D.D.C. 2008) (designating facts to be taken as established for purposes of plaintiff's action "would be tantamount to a default against defendant"); *Tara Prods. v. Hollywood Gadgets, Inc.*, 2014 WL 1047411, at *3 & n.7 (S.D. Fla. 2014) (noting that movant's request that designated facts be taken as established and that opposing party be barred from opposing claim "would be tantamount to a default judgment").

person or persons whose approval or authority was required before each punching program was introduced." *See* Eggers Decl., ¶ 11.

Braman apparently made the strategic decisions not to move to compel the production of Fleet Conversion-related documents, not to challenge BMW NA's Answers to Interrogatories, and not to object to the level of preparation of BMW NA's designated witness for Fleet Conversion-related matters. Having made those decisions, Braman is not now entitled to a "do-over" of discovery, particularly in the absence of any evidence that BMW NA's discovery responses were incomplete or inaccurate. Braman's request to re-open discovery is little more than an attempt to take a second bite at the apple, despite Braman's numerous opportunities to pursue such information during the prior thirty-two months of discovery. The Court should not permit it.

## CONCLUSION

Based on the foregoing arguments and authorities, BMW NA respectfully requests that the Court deny Braman's Motion for Sanctions in its entirety and award to BMW NA its reasonable expenses, including attorney's fees incurred in responding to the Motion.

DATED:  November 20, 2020                Respectfully submitted,

                                         BMW OF NORTH AMERICA, LLC


                                         /s/ Alison K. Eggers
                                         Peter S. Baumberger
                                         Michael F. Suarez
                                         **KUBICKI DRAPER, P.A.**
                                         25 West Flagler Street, Penthouse
                                         Miami, Florida 33130
                                         (305) 982-6774
                                         psb@kubickidraper.com
                                         mfs@kubickidraper.com

                                         William N. Berkowitz*
                                         John R. Skelton*
                                         James C. McGrath*
                                         Brandon L. Bigelow*
                                         Alison K. Eggers*
                                         **SEYFARTH SHAW LLP**
                                         Two Seaport Lane, Suite 300
                                         Boston, Massachusetts 02210
                                         (617) 946-4800
                                         wberkowitz@seyfarth.com
                                         jskelton@seyfarth.com
                                         jcmcgrath@seyfarth.com
                                         bbigelow@seyfarth.com
                                         aeggers@seyfarth.com
                                         * admitted pro hac vice

                                         Counsel for BMW of North America, LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 20, 2020, I filed the foregoing document through CM/ECF
with the United States District Court for the Southern District of Florida and that notice will be
provided to parties of record and the Court through CM/ECF.


*/s/ Michael F. Suarez*
Michael F. Suarez

*Counsel for BMW of North America, LLC*

Dated: November 20, 2020