UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-23360-CIV-GAYLES/OTAZO-REYES

BRAMAN MOTORS, INC., d/b/a
BRAMAN BMW, for itself and in the name
of the Department of Highway Safety and
Motor Vehicles of the State of Florida, for its
use and benefit,

PALM BEACH IMPORTS, INC., d/b/a
BRAMAN MOTORCARS, for itself and in
the name of the Department of Highway Safety
and Motor Vehicles of the State of Florida, for
its use and benefit, and

THE DEPARTMENT OF HIGHWAY
SAFETY AND MOTOR VEHICLES of the
State of Florida, for the use and benefit of
Braman Motors, Inc. and Palm Beach Imports,
Inc.,

  Plaintiffs,
v.

BMW OF NORTH AMERICA, LLC
and BAYERISCHE MOTOREN WERKE
AKTIENGESELLSCHAFT,

  Defendants.
_____/

BMW OF NORTH AMERICA, LLC,

  Counterclaimant,
v.

BRAMAN MOTORS, INC., d/b/a
BRAMAN BMW, for itself and in the name
of the Department of Highway Safety and
Motor Vehicles of the State of Florida, for its
use and benefit,

  Counterdefendant.
_____/

**REPORT AND RECOMMENDATION RE:
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

THIS CAUSE came before the Court upon the following submissions:

(1) Defendant / Counterclaimant BMW of North America, LLC's ("BMW NA", "Defendant", or "Counterclaimant") Motion for Summary Judgment (hereafter, "Summary Judgment Motion Re: Complaint") [D.E. 232]; and

(2) Plaintiff / Counterdefendant Braman Motors, Inc. d/b/a Braman BMW's ("Braman Miami", "Plaintiff", or "Counterdefendant") Motion for Summary Judgment as to BMW NA's Counterclaim (hereafter, "Summary Judgment Motion Re: Counterclaim") [D.E. 235].

The Summary Judgment Motion Re: Complaint and the Summary Judgment Motion Re: Counterclaim (together, "Cross-Motions for Summary Judgment") were referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Darrin P. Gayles, United States District Judge [D.E. 289]. The undersigned held a hearing on these matters on September 27, 2021 (hereafter, "Hearing") [D.E. 312]. For the reasons set forth below, the undersigned respectfully recommends that BMW NA's Summary Judgment Motion Re: Complaint be GRANTED IN PART and that Braman Miami's Summary Judgment Motion Re: Counterclaim be GRANTED.

## BACKGROUND

1. *Plaintiffs' Complaint:*

In their Fourth Amended Complaint, Braman Miami and co-Plaintiff Palm Beach Imports, Inc., d/b/a Braman Motorcars ("Braman Palm Beach") (together, "Plaintiffs" or "Braman") allege that they are franchised BMW NA dealers in Florida under the Florida Motor Vehicle Dealer Act (also referred to as "the Florida Dealer Act"). See Fourth Am. Compl. [D.E. 222 ¶ 11]. Plaintiffs further allege that each of them is a party with BMW NA to a Dealer Agreement, whose terms also bind their respective relationships. Id. ¶¶ 19-23.

Plaintiffs allege that, in the past, their Dealer Agreements "were structured around the trading margin of new vehicle sales—*i.e.*, the difference between the wholesale price set by BMW

2

[NA] for dealer vehicle purchases and the Manufacturer's Suggested Retail Price ('MSRP') set by BMW [NA] for retail customers" and that they "relied upon these margins for profits in their sales operations." Id. ¶ 32. However, that structure was changed to an Added Value Program ("AVP") whereby Plaintiffs could earn bonuses by hitting performance targets (hereafter, "AVP metrics"), which Plaintiffs claim are unilaterally and arbitrarily set, changed, and evaluated. Id. ¶¶ 33-35. The AVP bonuses are set as a percentage of MSRP (up to 5%) per vehicle sold. Id. ¶ 36. Plaintiffs claim that they have "no choice but to try and attain" the AVP metrics, which renders AVP "not a 'voluntary' program at all[.]" Id. ¶ 38. According to Plaintiffs, BMW NA published new Added Value Program Guides in January 2016 and June 2017. Id. ¶ 39.[1] Plaintiffs reference the following AVP metrics:

- Total Pre-Owned ("TPO") Component, based on the number of used vehicles sold, for a bonus payment of 0.5% MSRP on each new vehicle sold. Id. ¶ 44.

- Service Effectiveness Component, based on customer service volume, for a bonus payment of 1.75% MSRP on each new vehicle sold. Id. ¶ 62.

- Dealer Sales Loyalty Component, based on returning sales customers, for a bonus payment of 1.75% MSRP on each new vehicle sold. Id. ¶ 77.

Plaintiffs further allege that, in 2015, BMW NA "engaged in a nationwide practice of pressuring and attempting to coerce dealers to purchase BMW's excessive inventory and to report vehicles as sold (by 'punching' a Retail Delivery Report, or 'RDR'), when, in fact, those vehicles still sat unsold on dealers' lots." Id. ¶ 90. According to Plaintiffs, "[u]ltimately, the dealer had to dispose of the punched vehicles, alongside its new and used inventory." Id. ¶ 93. At the end of 2015, Plaintiffs "stopped punching unsold vehicles" due to excessive inventory, which ended their receipt of the associated "'bonus' money". Id. ¶ 96.

---

[1] Plaintiffs also reference a change to the AVP targets for the year 2019, which was announced on October 1, 2018. Id. ¶ 107.

Plaintiffs also reference BMW NA's Dealer Effectiveness Metric, which is based on the new vehicle registrations for various vehicle class segments in each primary market area ("PMA") assigned to a dealer and computed as the ratio of actual sales to expected sales, expressed as a percentage. Id. ¶¶ 97-101. Plaintiffs contend that this metric is "arbitrary and inequitable". Id. ¶ 103.

Based on these allegations, which they claim constitute violations of the Florida Dealer Act and their respective Dealer Agreements, see Fourth Am. Compl. [D.E. 222 at 22], Plaintiffs assert claims against BMW NA and co-Defendant Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") (together, "Defendants").[2] In their Opposition to BMW NA's Summary Judgment Motion Re: Complaint (hereafter, "Plaintiffs' Opposition"), Plaintiffs withdrew Counts V, VI, VII and XI of the Fourth Amended Complaint. See Plaintiffs' Opposition [D.E. 249 at 6 n.1]. The surviving claims are:

| | |
|---|---|
| Count I: | Violation of the Florida Dealer Act, Fla. Stat. §§ 320.64(5) and (6) BMW's Practice of Punching RDRs for Vehicles Not Sold to Consumers (Against all Defendants) |
| Count II: | Violation of the Florida Dealer Act, Fla. Stat. § 320.64(34) Total Pre-Owned Component – 0.5% MSRP (Against all Defendants) |
| Count III: | Violation of the Florida Dealer Act, Fla. Stat. § 320.64(42)(a) Sales Loyalty Component – 1.75% MSRP (Against all Defendants) |
| Count IV: | Violation of the Florida Dealer Act, Fla. Stat. § 320.64(42)(a) Service Effectiveness Component – 1.75% MSRP (Against all Defendants) |
| Count VIII: | Breach of Dealer Agreement (Against BMW NA) |

---

[2] BMW AG has moved to dismiss the Fourth Amended Complaint for lack of personal jurisdiction and failure to state a claim [D.E. 275]. The undersigned addresses that motion in a separate report and recommendation.

    Count IX:    Breach of Implied Covenant of Good Faith and Fair Dealing (Against BMW NA)

    Count X:    Violation of the Florida Dealer Act, Fla. Stat. §§ 320.64(42)(a) (Against all Defendants)

See Fourth Am. Compl. [D.E. 222 at 23-28, 33-37].[3]

At the Hearing, Plaintiffs divided these extant claims into two main categories: the performance metrics claims; and the "punching" claims. See Hearing Transcript [D.E. 333 at 31].[4] According to Plaintiffs, the performance metrics claims are set forth in Counts III, IV and X. Id. Plaintiffs argued that these challenged metrics are unlawful under the Florida Dealer Act, Fla. Stat. §§ 320.60-320.70, and that they are "teed up for injunctive relief[.]" Id. at 45.[5] Plaintiffs further stated that their "punching" claims are set forth in Counts I, VIII and IX. Id. at 46. BMW NA argued that those claims are limited to 2015. Id. at 55; see also Fourth Am. Compl. [D.E. 222 ¶¶ 90, 96] (alleging that the punching program started in 2015 and that Plaintiffs stopped punching at the end of 2015). One additional extant claim, asserted in Count II, relates to an AVP metric based on used car sales, but appears to stand alone.

    *2. Defendant's Counterclaim:*

In addition to answering the Fourth Amended Complaint, BMW NA filed a Counterclaim against Braman Miami, asserting a single claim for breach of contract. See Counterclaim [D.E. 229 at 25-26]. BMW NA's Counterclaim is predicated on "dealer agreements for the sale of BMW passenger cars and BMW light trucks", which BMW NA refers to as the "Center Agreements".

---

[3] BMW NA argues that it is entitled to summary judgment as to all of Plaintiffs' claims, including the withdrawn counts. See Summary Judgment Motion Re: Complaint [D.E. 232 at 6]; Reply in Support of Summary Judgment Motion Re: Complaint (hereafter "BMW NA's Reply") [D.E. 265 at 12-13].

[4] As noted above, the term "punching" relates to the alleged requirement that dealers purchase excessive inventory and report those vehicles as sold by "punching" a "Retail Delivery Report" or "RDR". See Fourth Am. Compl. [D.E. 222 ¶ 90].

[5] Plaintiffs seek injunctive relief in Count X and had sought both injunctive relief and damages in Counts III and IV. See Fourth Am. Compl. [D.E. 222 at 26-28, 37].

Id. ¶ 1. BMW NA alleges that:

> Under the Center Agreements, Braman [Miami] promised it would "achieve the best possible sales performance obtainable for BMW Vehicles," and agreed that its sales performance would be evaluated by BMW NA "on the basis of such reasonable and equitable criteria as may be determined from time to time by BMW NA."

Id. ¶ 2.

BMW NA further alleges that Braman Miami "has extracted far more profit from BMW customers in its market area than other BMW dealers, on average. Similarly, Braman [Miami's] pricing strategy for service operations has adversely affected the dealership's overall performance[;]" and Braman Miami "has chosen to maximize profits at the expense of its customers and its core contractual obligations. . . ." Id. ¶ 4. Thus, BMW NA claims that Braman Miami "has materially breached the Center Agreements" by failing "to achieve the best possible sales performance obtainable for BMW vehicles". Id. ¶ 9. In its prayer for relief, BMW NA seeks nominal damages and a declaratory judgment that Braman Miami has materially breached the Center Agreements. Id. at 26.

## STANDARD OF REVIEW

### 1. *Summary Judgment.*

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (hereafter "Rule 56(a)") "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Fonseca v. Wal-Mart Stores, E., LP, No. 18-CV-62768, 2019 WL 7371813, at *2 (S.D. Fla. 2019) (quoting Anderson, 477 U.S. at 248).

6

The movant must support its assertion that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When determining whether a genuine issue of material fact exists, courts "view all evidence and draw all reasonable inferences in favor of the nonmoving party." Smith v. Royal Caribbean Cruises, Ltd., 620 F. App'x 727, 729 (11th Cir. 2015). Courts "resolve factual controversies in favor of the nonmoving party [] only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). "*We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" Id. (emphasis in original).

### 2. *The Florida Motor Vehicle Dealer Act.*

The Florida Motor Vehicle Dealer Act, Fla. Stat. §§ 320.60-320.70, is intended "to protect the public health, safety, and welfare of the citizens of the state by regulating the licensing of motor vehicle dealers and manufacturers, maintaining competition, providing consumer protection and fair trade and providing minorities with opportunities for full participation as motor vehicle dealers." Id. § 320.605. The Florida Motor Vehicle Dealer Act provides, in pertinent part:

> No manufacturer, factory branch, distributor, or importer (all sometimes referred to hereinafter as "licensee") shall engage in business in this state without a license therefor as provided in ss. 320.60-320.70. No motor vehicle, foreign or domestic, may be sold, leased, or offered for sale or lease in this state unless the manufacturer, importer, or distributor of such motor vehicle, which issues an agreement to a motor vehicle dealer in this state, is licensed under ss. 320.60-320.70.

Id. § 320.61.

Plaintiffs predicate their Florida Motor Vehicle Dealer Act claims on Sections 320.64(5), (6), (34), and 42(a), which provide:

> [A] licensee or applicant shall be liable for claims and remedies provided in ss. 320.695 and 320.697 for any violation of any of the following provisions. A licensee is prohibited from committing the following acts:
>
> \*\*\*
>
> (5) The applicant or licensee has coerced or attempted to coerce any motor vehicle dealer into accepting delivery of any motor vehicle or vehicles or parts or accessories therefor or any other commodities which have not been ordered by the dealer.
>
> (6) The applicant or licensee has coerced or attempted to coerce any motor vehicle dealer to enter into any agreement with the licensee.
>
> \*\*\*
>
> (34) The applicant or licensee, after the effective date of this subsection, has included in any franchise agreement with a motor vehicle dealer a mandatory obligation or requirement of the motor vehicle dealer to purchase, sell, or lease, or offer for purchase, sale, or lease, any quantity of used motor vehicles.
>
> \*\*\*
>
> (42)(a) The applicant or licensee has established, implemented, or enforced criteria for measuring the sales or service performance of any of its franchised motor vehicle dealers in this state which have a material or adverse effect on any motor vehicle dealer and which:
>
> 1. Are unfair, unreasonable, arbitrary, or inequitable; or
>
> 2. Do not include all relevant and material local and regional criteria, data, and facts. Relevant and material criteria, data, or facts include, but are not limited to, those of motor vehicle dealerships of comparable size in comparable markets. If such performance measurement criteria are based, in whole or in part, on a survey, such survey must be based on a statistically significant and valid random sample.

<u>Id.</u> §§ 320.64 (5), (6), (34) & 42(a).

Sections 320.695 and 320.697 provide remedies in the form of injunctive relief and treble damages as follows:

> In addition to the remedies provided in this chapter, and notwithstanding the existence of any adequate remedy at law . . . any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer,

8

>is authorized to make application to any circuit court of the state for the grant, upon a hearing and for cause shown, of a temporary or permanent injunction, or both, restraining any person from . . . violating or continuing to violate any of the provisions of ss. 320.60-320.70, or from failing or refusing to comply with the requirements of this law or any rule or regulation adopted hereunder. Such injunction shall be issued without bond. A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction. . . .

Id. § 320.695.

>Any person who has suffered pecuniary loss or who has been otherwise adversely affected because of a violation by a licensee of ss. 320.60-320.70, notwithstanding the existence of any other remedies under ss. 320.60-320.70, has a cause of action against the licensee for damages and may recover damages therefor in any court of competent jurisdiction in an amount equal to 3 times the pecuniary loss, together with costs and a reasonable attorney's fee to be assessed by the court. Upon a prima facie showing by the person bringing the action that such a violation by the licensee has occurred, the burden of proof shall then be upon the licensee to prove that such violation or unfair practice did not occur.

Id. § 320.697.

**BMW NA'S SUMMARY JUDGMENT MOTION RE: COMPLAINT**

Initially, the undersigned addresses BMW NA's contention that it is entitled to summary judgment as to Plaintiffs' withdrawn claims, which were asserted in Counts V, VI, VII and XI of the Fourth Amended Complaint. Plaintiffs' failure to adduce "evidence of contradictory facts" as to these counts, or to even address them in Plaintiffs' Opposition, precludes an assumption that they "*could or would prove the necessary facts*", Little, 37 F.3d at 1075 (emphasis in original), to defeat this portion of BMW NA's Summary Judgment Motion Re: Complaint. Therefore, the undersigned respectfully recommends that summary judgment be granted in favor of BMW NA as to Counts V, VI, VII and XI. Thus, the undersigned proceeds to address Plaintiffs' "punching" claims asserted in Counts I, VIII and IX; their performance metrics claims asserted in Counts III, IV and X; and their claim related to the sale of used vehicles asserted in Count II.

1. *The "punching" claims.*

In Count I of the Fourth Amended Complaint, Plaintiffs allege violations of Sections 320.64(5) & (6) of the Florida Dealer Act, which prohibit a licensee from coercing or attempting to coerce dealers: to accept delivery of motor vehicles that the dealer did not order; and to enter into any agreement with the licensee. Fla. Stat. §§ 320.64(5) & (6).[6]

BMW NA argues that the coercion element under the Florida Dealer Act requires "(1) a wrongful demand combined with (2) a threat of sanctions if the demand is not carried out." See Summary Judgment Motion Re: Complaint [D.E. 232 at 12] (citing Cabriolet Porche Audi, Inc. v. Am. Honda Motor Co., Inc., 773 F.2d 1193, 1210 (11th Cir. 1985); Lussier Enters., Inc. v. Subaru of New England, Inc., 393 F.3d 36, 47-48 (1st Cir. 2004); Long-Lewis Sterling W. Star of Bessemer v. Sterling Truck Corp, 460 F. App'x 819, 820 (11th Cir. 2012); Colonial Dodge v. Chrysler Corp., 11 F. Supp. 2d 737, 743 (D. Md. 1996), aff'd, 121 F.3d 697 (4th Cir. 1997)). Plaintiffs challenge this definition but ultimately take the position that the requirement for a threat of sanctions is met here. See Plaintiffs' Opposition [D.E. 249 at 28].

BMW NA contends that, contrary to Plaintiffs' claims, "there was no coercion or attempted coercion as a matter of undisputed fact" in this case. See Summary Judgment Motion Re: Complaint [D.E. 232 at 13]. In support of this proposition, BMW NA cites to the Declaration of Carol Strickland, BMW NA's Area Manager for South Florida, and to excerpts of the depositions of Braman employees Steve Grossman, Lisa Solodar, Guillermo Peraza, and Alex Shack. See Summary Judgment Motion Re: Complaint [D.E. 232 at 13-14]; Hearing Demonstrative Exhibits [D.E. 314-1 at 6-11, 14-15, 17] (with citations to summary judgment record). BMW NA also

---

[6] As previously noted, Plaintiffs also designate their claims for breach of Dealer Agreement and breach of implied covenant of good faith and fair dealing asserted in Counts VIII and IX of the Fourth Amended Complaint as "punching" claims. See Hearing Transcript [D.E. 333 at 46].

10

proffers a summary of Plaintiffs' list of "punched" cars in 2015 and the corresponding payments from BMW NA, showing a total of 549 cars and $1,551,500 for Braman Miami and 746 cars and $1,170,000 for Braman Palm Beach.  See Summary Judgment Motion Re: Complaint [D.E. 232 at 13-14]; Hearing Demonstrative Exhibit [D.E. 314-1 at 16] (with citations to summary judgment record).  BMW NA likens Plaintiffs' "punching" claims to those in Cabriolet, in which the Eleventh Circuit found "nothing coercive in presenting to a car dealer an opportunity to reap substantial profits".  Cabriolet, 773 F.2d at 1210.

Plaintiffs counter that, notwithstanding BMW NA's payments, the "punching" program amounted to economic coercion, relying on additional deposition testimony from Alex Shack:

> Just to be clear, when you say accepting [the] offer, I have to just reiterate the fact that you have to do these things to be competitive, that when a dealer is going to get thousands of dollars on the exact same vehicle that you have, it isn't accepting it as much as acquiescing to the pressure to stay competitive.

See Plaintiffs' Opposition [D.E. 249 at 24] (citing Excerpt of Deposition of Alex Shack [D.E. 253-1 at 107:9-15, filed under seal]).  Plaintiffs also cite to an email communication among BMW NA executives that they claim is evidence of retaliation by BMW NA for Plaintiffs' decision to stop "punching" cars.  Id. at 26 (referring to D.E. 253-40, filed under seal).  Given that the existence of coercion involves a factual determination and that Plaintiffs have adduced the foregoing evidence, the undersigned does not find that this issue can be disposed of as a matter of law.

BMW NA argues that, even if Plaintiffs show coercion, they cannot show that they have "'suffered pecuniary loss or . . . [have] been otherwise adversely affected because of a violation'" by BMW NA, as alleged in Count I.  See Summary Judgment Motion Re: Complaint [D.E. 232 at 14] (citing Fla. Stat. § 320.697).  BMW NA further argues that Plaintiffs have failed to adduce evidence of damages in connection with their related breach of contract claims asserted in Counts VIII and IX.  See Hearing Demonstrative Exhibit [D.E. 314-1 at 46] (citing Siever v. BWGaskets,

11

Inc., 669 F. Supp. 2d 1286, 1300 (M.D. Fla. 2009) ("Under Florida law, damages are an essential element of an action for breach of contract.") (citing Rollins, Inc. v. Butland, 951 So.2d 860, 876 (Fla. 2d DCA 2006))). In this regard, BMW NA notes that none of Plaintiffs' experts have rendered any opinions that would support a pecuniary loss or damages claim. See Hearing Demonstrative Exhibits [D.E. 314-1 at 24-26] (citing to Excerpt of Deposition of Edward M. Stockton [D.E. 233-2 at 251-63]; Excerpt of Deposition of Lewis Fisher, CPA [D.E. 233-2 at 265-68]; and Excerpt of Deposition of Diane Anderson Murphy [D.E. 233-2 at 270-85]). Given that Plaintiffs have not adduced evidence of pecuniary loss or damages in support of their "punching" claims, BMW NA is entitled to summary judgment as to Counts I, VIII and IX.

### 2. *The performance metrics claims.*

Plaintiffs allege in Counts III and IV of the Fourth Amended Complaint that BMW NA's Sales Loyalty Component and Service Effectiveness Component of the AVP, respectively, violate Section 320.64(42)(a) of the Florida Dealer Act; and in Count X, Plaintiffs challenge BMW NA's Dealer Effectiveness Metric under the same provision. The Florida Dealer Act prohibits a licensee from "establish[ing], implement[ing], or enforc[ing] criteria for measuring the sales or service performance of any of its franchised motor vehicle dealers in this state which have a material or adverse effect on any motor vehicle dealer and which [a]re unfair, unreasonable, arbitrary, or inequitable" or that do not "include all relevant and material local and regional criteria, data, and facts." See Fla. Stat. § 320.64(42)(a)(1-2). As to each of these Counts, Plaintiffs seek

> injunctive relief. We don't have to show an actual monetary loss. What we want is a permanent injunction that these three metrics; dealer sales loyalty, service effectiveness and dealer effectiveness are unlawful and cannot be used at BMW for any purpose, whether it's part of the AVP program in the case of dealer sales loyalty and service effectiveness, or as a means to declare a dealership in material breach of its sales performance obligations like dealer effectiveness is being used by BMW NA [in the Counterclaim].

See Hearing Transcript [D.E. 333 at 54].

BMW NA argues that, to obtain injunctive relief as a remedy for their performance metrics claims, which are predicated on state law, Plaintiffs must still comply with the federal requirement that they make a showing of irreparable injury. See Hearing Transcript [D.E. 333 at 28-29]; Barrett v. Walker Cty. Sch. Dist., 872 F.3d 1209, 1229 (11th Cir. 2017) ("To obtain a permanent injunction, a plaintiff must show (1) that he has suffered an irreparable injury . . . ."); Guaranty Tr. of N.Y. v. York, 326 U.S. 99, 106 (1945) ("State law cannot define the [equitable] remedies which a federal court must give . . . ."). Plaintiffs argue that this irreparable injury element is met by their "having to operate under a regime of illegal performance standards", which impose "business operations and business requirements that the state legislature in Florida has determined are unlawful", relying on Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286 (3d Cir. 2005). See Hearing Transcript [D.E. 333 at 58, 60]. In Danvers, the Third Circuit found that "loss of control over day-to-day dealership activities" resulting from a "program designed [by Ford] to improve dealer performance" qualified as an injury. Id. at 288, 293. Given Plaintiffs' argument that the intrinsic nature of the performance metrics supports their claim of irreparable injury and their demand for injunctive relief, the undersigned concludes that summary judgment in favor of BMW NA is not appropriate as to Counts III, IV and X.

### 3. *The used vehicles sales quota claim.*

Count II asserts a claim for violation of Section 320.64(34) of the Florida Dealer Act, which provides that licensees may not include in their franchise agreements a requirement that dealers "purchase, sell, or lease, or offer for purchase, sale, or lease, any quantity of used motor vehicles." Fla. Stat. § 320.64(34). Plaintiffs allege that, on April 1, 2016, the TPO Component of the AVP metrics was introduced, "which tied a 'bonus' payment equal to 0.5% MSRP on every new vehicle sold to the number of used BMW vehicles the dealer sold . . . *even though the franchise agreement is silent as to any specific number*." See Fourth Am. Compl. [D.E. 222 ¶ 44] (emphasis added).

13

Thus, Plaintiffs have explicitly acknowledged that there is no provision in their Dealer Agreements imposing a used vehicles sales quota. Nevertheless, Plaintiffs argue that the TPO Component "created a mandatory requirement for [Plaintiffs] to sell a certain number of used BMW vehicles to stay competitive in the market." See Plaintiffs' Opposition [D.E. 249 at 19]. However, this contention is no substitute for the contractual term that is prohibited by the Florida Dealer Act and Plaintiffs have proffered no evidence that that their Dealer Agreements were modified to incorporate such purported "mandatory requirement". Therefore, Plaintiffs' claim pursuant to Fla. Stat. § 320.64(34) is fatally flawed and BMW NA is entitled to summary judgment as to Count II.

### BRAMAN MIAMI'S SUMMARY JUDGMENT MOTION RE: COUNTERCLAIM

As discussed above, BMW NA asserts a single breach of contract claim against Braman Miami in its Counterclaim, which is predicated on Braman Miami's purported failure to achieve the best possible sales performance obtainable for BMW vehicles. See Summary Judgment Motion Re: Counterclaim [D.E. 235 at 6]. As relief, BMW NA seeks nominal damages and a declaratory judgment that Braman Miami has materially breached the Center Agreements. Id. Braman Miami argues that BMW NA's "Counterclaim suffers from five unfixable infirmities and should be dismissed." See Summary Judgment Motion Re: Counterclaim [D.E. 235 at 6]. According to Braman Miami: the Counterclaim is not actionable because the alleged breach of contract is not material and did not cause damages; a declaratory judgment is inapplicable to a breach that occurred in the past, as alleged by BMW NA; BMW NA is seeking an advisory opinion; BMW NA relies on an improper metric for its breach of contract claim; and BMW NA's claim that Braman Miami's prices are higher than those of its competitors is statistically unsound. Id. at 6-8. The undersigned finds that, as a matter of law, BMW NA cannot obtain the relief it seeks, in the form of nominal damages and declaratory judgment, in its breach of contract claim

and recommends that Braman Miami's Summary Judgment Motion Re: Counterclaim be granted on these grounds. For completeness, the undersigned addresses Braman Miami's other arguments.

### 1. *Nominal damages and declaratory judgment*

"The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." Beck v. Lazard Feres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999) (citing Abruzzo v. Haller, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). Braman Miami argues that BMW NA has "neither pleaded, nor offered any evidence to prove, the materiality of the alleged breach or that it suffered damages." See Summary Judgment Motion Re: Counterclaim [D.E. 235 at 9-10].

In an earlier version of its Counterclaim, BMW NA had sought "(1) a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Braman [Miami] has materially breached the Dealer Agreements; [and] (2) damages in such amount as may be determined at trial[.]" See Answer to Amended Complaint and Counterclaim for Breach of Contract Against Braman Motors, Inc. [D.E. 31 at 25]. Thereafter, in connection with its answer to Plaintiffs' Second Amended Complaint, BMW NA only sought "a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Braman [Miami] has materially breached the Dealer Agreements[.]" See Counterclaim for Breach of Contract Against Braman Motors, Inc. [D.E. 68 at 23]. At a discovery hearing held after that later filing, BMW confirmed that "there [wa]s no affirmative damages claim" in its pleading. See Transcript of July 11, 2018 Hearing [D.E. 100 at 42:11-12]. After some discussion, the undersigned ruled as follows:

> As it stands right now[,] they are not asking for damages. Whether their counterclaim is sufficient or not, at this stage it's been answered. I don't know what further motion practice there will be with regard to it, but unless and until they claim money damages, you don't get into cost of goods sold.

Id. at 45:12-17.  BMW NA relied on this ruling to object to a damages line of questioning at its corporate representative's deposition, stating, "There are no claim[s] for monetary damages in this case; and "the court agreed that because we were not seeking any form of monetary damages [the cost of goods sold] wasn't relevant to our counterclaim."  See Excerpts of Transcript of August 17, 2020 Deposition of Peter Buchauer (hereafter, "Buchauer Depo. Tr.") [D.E. 235-7 at 93:13-14, 19-23].

In its current pleading, BMW NA has added a claim for nominal damages.  See Counterclaim [D.E. 229 at 26].

> "Nominal damages are damages in name only, trivial sums such as six cents or $1." 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 3.3(2), at 294 (2d ed.1993). They do not purport to compensate for past wrongs. They are symbolic only. But that does not mean they are without legal import. There are times when an authoritative legal determination of a dispute is all that the parties require: neither damages nor injunctive relief are necessary. Nominal damages can be a practical and effective remedy, both in constitutional and in other civil cases, where there is a genuine case or controversy between the parties but the injury to the plaintiff is not monetary and there is no basis for compensatory damages. *See id.*; *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

See Utah Animal Rights Coalition v. Salt Lake City Corp., 371 F.3d 1248, 1264 (10th Cir. 2004) (McConnell, J., concurring); see also Tampa Port Auth. v. M/V Duchess, 65 F. Supp. 2d 1305, 1307 (M.D. Fla. 1998) ("Nominal damages are appropriate where there is no actual, provable injury" but "are not appropriate when there *is* proof of an actual injury.") (emphasis in original) (citations omitted).  In its Counterclaim, BMW NA alleges that Braman Miami's purported choice "to maximize profits at the expense of . . . its core contractual obligations to BMW NA to 'achieve the best possible sales performance obtainable for BMW Vehicles'" has caused "BMW NA to lose hundreds of sales to its competitors annually."  See Counterclaim [D.E. 229 ¶¶ 4-5].  Moreover, BMW NA has proffered evidence of these allegedly lost vehicle sales in the form of charts associated with the report of its expert Sharif Farhat ("Mr. Farhat") (hereafter, "Mr. Farhat's Expert

16

Report"), which were presented by BMW NA as Demonstrative Exhibits and were discussed in detail at the Hearing (hereafter "Charts"). See Hearing Transcript [D.E. 333 at 72-73].[7] The Charts reflect Mr. Farhat's calculations of BMW NA's annual lost vehicle sales, plus a total vehicle figure for the 2015-2019 period. Id.; see also Charts [D.E. 314-2 at 11-15; D.E. 296-3 at 50, 48, 46, 44 & 42 (filed under seal)]. Because BMW NA has alleged an injury, consisting of the loss of hundreds of vehicle sales to its competitors annually, and has proffered proof of such loss by way of Mr. Farhat's Expert Report, nominal damages are not an appropriate remedy for its breach of contract Counterclaim. Utah Animal Rights Coalition, 371 F.3d at 1264; Tampa Port Auth., 65 F. Supp. 2d at 1307. At the Hearing, BMW NA acknowledged that, with respect to nominal damages versus compensatory damages, "you can't sort of change horses in the middle of the case." See Hearing Transcript [D.E. 333 at 82]. But this is exactly what BMW NA has done in its Counterclaim, first seeking compensatory damages, then no damages, and finally nominal damages. Thus, BMW NA's single breach of contract claim lacks a viable damages element.[8]

BMW NA also seeks a declaratory judgment that Braman Miami has materially breached the Center Agreements in its breach of contract Counterclaim. BMW NA has hardly addressed this issue, merely positing that its "claim for nominal damages moots the need for the Court to resolve any dispute of the applicability of the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to

---

[7] Braman Miami submitted Mr. Farhat's expert report as part of the summary judgment record. See Hearing Transcript [D.E. 333 at 71] ("Mr. Farhat issued a 94-page report which Plaintiffs themselves put into evidence on [the Summary Judgment Motion Re: Counterclaim] it's at docket 235-21."). That docket entry consists only of a cover sheet stating that it is "Subject to Motion to Seal" [D.E. 235-21]. However, a complete copy of Mr. Farhat's sealed expert report was filed at D.E. 296-3 and the same Charts that BMW NA presented as Hearing Demonstrative Exhibits and subsequently filed at D.E. 314-2, pages 11-15, are found at D.E. 296-3, pages 50, 48, 46, 44 & 42 (filed under seal).

[8] BMW NA also relies on Mr. Farhat's Expert Report to argue that the loss of sales documented therein satisfies the materiality requirement for its breach of contract claim. See Hearing Transcript [D.E. 333 at 74-75]. Although Plaintiffs have moved to strike Mr. Farhat's Expert Report [D.E. 296, filed under seal], it is currently part of the summary judgment record and does support the materiality element. Smith, 620 F. App'x at 729.

17

this action." See BMW NA's Opposition to the Summary Judgment Motion Re: Counterclaim (hereafter, "BMW NA's Opposition") [D.E. 246 at 15]. At the Hearing, Braman Miami argued that BMW NA may have effectively abandoned this request for relief. See Hearing Transcript [D.E. 333 at 70]. However, the undersigned's conclusion that BMW NA's breach of contract claim lacks a viable damages element requires addressing this additional issue to the extent it has not been abandoned.

> A petition seeking declaratory judgment that alleges breach of duties and obligations under the terms of a contract and asks the court to declare those terms breached is nothing more than a petition claiming breach of contract. It thus provides an adequate remedy at law, and a decision on the merits of the breach of contract claim would render the defendant's request for declaratory judgment moot or redundant.

Eisenberg v. Standard Ins. Co., No. 09–80199–CIV., 2009 WL 1809994, at *3 (S.D. Fla. June 25, 2009) (citation omitted). "Indeed, the purpose of the Declaratory Judgment Act is to clarify the legal relations at issue and to settle controversies *prior* to a legal breach of duty or contract." Id. (citation omitted and emphasis in original). Here, BMW NA alleges that Braman Miami has already breached the Center Agreements, which renders its request for declaratory judgment moot or redundant. Id. Thus, BMW NA's request for a declaratory judgment as relief for its breach of contract claim is also fatally flawed.

Because BMW NA cannot obtain the nominal damages and the declaratory judgment relief it seeks in its breach of contract claim as a matter of law, Braman Miami is entitled to summary judgment on BMW NA's Counterclaim. Braman Miami's additional arguments are addressed below for completeness.

### 2. *Other Braman Miami arguments*

At the Hearing, BMW NA argued that prevailing on its breach of contract claim might "lead Braman Miami to cure its breach by improving its sales performance at least to average

18

levels[.]"  See Hearing Transcript [D.E. 333 at 75].  Braman Miami argues that what BMW NA is seeking is an advisory opinion regarding Braman Miami's performance under the Center Agreements, without complying with the contractually required procedural and remedial steps. See Summary Judgment Motion Re: Counterclaim [D.E. 235 at 14-15].  In essence, Braman Miami contends that BMW NA has failed to comply with conditions precedent to bringing its breach of contract claim.  See Hearing Transcript [D.E. 333 at 77-79].  BMW NA counters that it need not do so because it is not "pursuing termination of the dealer agreement."  Id. at 76.  However, BMW NA's use of the courts for improving Braman Miami's performance violates the principle that "a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Gagliardi v. TJCV Land Tr., 889 F.3d 728, 733 (11th Cir. 2018) (internal citations and quotations omitted).

      Braman Miami also argues that its allegedly low Dealer Effectiveness score is insufficient to support BMW NA's breach of contract claim because its corporate representative admitted that BMW NA gives this metric "little or no weight when evaluating dealers through the Balanced Scorecard" used to evaluate dealer performance.  See Summary Judgment Motion Re: Counterclaim [D.E. 235 at 15].  Moreover, with regard to BMW NA's over-pricing theory, Braman Miami cites the following excerpt from the deposition testimony of its corporate representative:

> Q. Does BMW NA have a range of gross profit per new vehicle retailed that a dealer realizes that BMW believes is acceptable for a dealer to earn?
>
> A. No, we don't have a range.

See Buchauer Depo. Tr. [D.E. 235-7 at 24:1-4].  However, Braman Miami's challenges to BMW NA's methodology for assessing Braman Miami's performance would go to the weight of the evidence and cannot be resolved on summary judgment.  See Fed. R. Civ. P. 56(a);  Anderson,

19

477 U.S. at 248.

## CONCLUSION

Based on the foregoing considerations, it is

RESPECTFULLY RECOMMENDED that BMW NA's Summary Judgment Motion Re: Complaint [D.E. 232] be GRANTED IN PART as to Counts I, II, V, VI, VII, VIII, IX and XI and be otherwise DENIED; and that Braman Miami's Summary Judgment Motion Re: Counterclaim [D.E. 235] be GRANTED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida this 11th day of February, 2022.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:   United States District Judge Darrin P. Gayles
      Counsel of Record