**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 17-23360-CIV-GAYLES/OTAZO-REYES**

BRAMAN MOTORS, INC., d/b/a
BRAMAN BMW, for itself and in the name
of the Department of Highway Safety and
Motor Vehicles of the State of Florida, for its
use and benefit,

PALM BEACH IMPORTS, INC., d/b/a
BRAMAN MOTORCARS, for itself and in
the name of the Department of Highway Safety
and Motor Vehicles of the State of Florida, for
its use and benefit, and

THE DEPARTMENT OF HIGHWAY
SAFETY AND MOTOR VEHICLES of the
State of Florida, for the use and benefit of
Braman Motors, Inc. and Palm Beach Imports,
Inc.,

      Plaintiffs,

v.

BMW OF NORTH AMERICA, LLC
and BAYERISCHE MOTOREN WERKE
AKTIENGESELLSCHAFT,

      Defendants.
_____/

BMW OF NORTH AMERICA, LLC,

      Counterclaimant,

v.

BRAMAN MOTORS, INC., d/b/a
BRAMAN BMW, for itself and in the name
of the Department of Highway Safety and
Motor Vehicles of the State of Florida, for its
use and benefit,

      Counterdefendant.
_____/

**REPORT AND RECOMMENDATION RE:**
**MOTION TO DISMISS**

THIS CAUSE came before the Court upon Defendant Bayerische Motoren Werke Aktiengesellschaft's ("BMW AG", "AG", or "Defendant") Motion to Dismiss Plaintiffs Braman Motors, Inc. d/b/a Braman BMW ("Braman Miami") and Palm Beach Imports, Inc., d/b/a Braman Motorcars' ("Braman Palm Beach") (together, "Plaintiffs" or "Braman") Fourth Amended Complaint (hereafter, "Third Motion to Dismiss") [D.E. 275].[1]  This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Darrin P. Gayles, United States District Judge [D.E. 289].   The undersigned held a hearing on this matter on September 27, 2021 (hereafter, "Hearing") [D.E. 312].  For the reasons set forth below, the undersigned respectfully recommends that BMW AG's Third Motion to Dismiss be GRANTED WITH PREJUDICE.

## BACKGROUND

In their Fourth Amended Complaint, Plaintiffs bring claims against BMW AG and co-Defendant BMW of North America, LLC ("BMW NA") (together, "Defendants").  See Fourth Am. Compl. [D.E. 222].[2]   Plaintiffs contend that they are franchised BMW NA dealers in Florida under the Florida Motor Vehicle Dealer Act, Fla. Stat. §§ 320.60-320.70 (also referred to as "the Florida Dealer Act").  Id. ¶ 11.  All of Plaintiffs' claims against BMW AG are predicated on the Florida Dealer Act.

In their Second Amended Complaint, Plaintiffs had asserted Florida Dealer Act claims against BMW AG.  See Second Am. Compl. [D.E. 54].  In response, BMW AG moved to dismiss for lack of personal jurisdiction and failure to state a claim, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure (hereafter, "Rule 12(b)(2)" and "Rule 12(b)(6)").  See BMW AG's Motion to Dismiss Pursuant to Rule 12(b)(2) and Rule 12(b)(6) (hereafter, "First

---

[1]  As recounted below, BMW AG has moved for dismissal on two prior occasions.
[2]  The Fourth Amended Complaint that is in the public record at D.E. 222 has been redacted.  See Fourth Am. Compl. [D.E. 222].  An unredacted version is filed under seal at D.E. 211-1.

Motion to Dismiss") [D.E. 118].  After responding to the First Motion to Dismiss, Plaintiffs sought leave to supplement the Second Amended Complaint, which was granted, and Plaintiffs were directed to file a Third Amended Complaint, thereby mooting the First Motion to Dismiss [D.E. 119, 122, 124, 126].  Thereafter, Plaintiffs filed a Corrected Third Amended Complaint, again asserting claims against BMW AG predicated on the Florida Dealer Act.  See Corrected Third Am. Compl. [D.E. 127].  BMW AG again moved to dismiss on the same grounds.  See BMW AG's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (hereafter, "Second Motion to Dismiss") [D.E. 129].

In connection with BMW AG's Second Motion to Dismiss, the parties presented to the Court "affidavits from corporate officers attesting to the relationship between BMW AG and BMW NA."  See Order [D.E. 154 at 2 n.2] (citing D.E. 129-1, 130-1).  The Court also "considered as part of the record" evidence submitted by Plaintiffs "during argument on the Motion" that Plaintiffs had "obtained in discovery".  Id.  The Court initially considered Plaintiffs' argument that the Florida Dealer Act "contains a jurisdictional component that allows dealers to sue manufacturers even if they are not 'at home' in Florida."  Id. at 6.  After thoroughly examining the statutory text, the Court rejected this argument.  Id. at 6-9.  Specifically, the Court concluded that "there is no basis to hold that the Florida Dealer Act conveys personal jurisdiction on BMW AG." Id. at 9.  The Court also gave careful consideration to the potential for establishing personal jurisdiction over BMW AG under the Florida long-arm statute, Fla. Stat. § 48.193, without offending the Due Process Clause.  Id. at 9-13.  However, the Court ultimately concluded that the exercise of personal jurisdiction as to BMW AG was "not appropriate."  Id. at 13.  Thus, the Court dismissed BMW AG without prejudice for lack of personal jurisdiction and denied as moot BMW AG's motion to dismiss on the additional grounds that Plaintiffs' Corrected Third Amended

Complaint failed to state a claim.  Id. at 14.

At a subsequent status conference [D.E. 215], the Court granted Plaintiffs leave to amend

their pleading to re-assert claims against BMW AG.  See Paperless Order [D.E. 216]; Transcript

of Telephonic Status Conference (hereafter, "Status Conference Tr.") [D.E. 228 at 4-5, 9].  The

Court explained the rationale for its ruling as follows:

> I granted the motion first without prejudice because the deficiency primarily was
> the lack of sufficient details against BMW AG and the plaintiff now is attempting
> to cure that deficiency. There are some issues with regard to whether or not that
> Florida Statute confers jurisdiction but, otherwise, I don't – I didn't close the door
> in that original order preventing the plaintiff from doing so.

See Status Conference Tr. [D.E. 228 at 9].  Plaintiffs then filed the Fourth Amended Complaint

that is the subject of BMW AG's Third Motion to Dismiss.

With respect to Plaintiffs' latest pleading, BMW AG again argues that all counts against it

should be dismissed for lack of personal jurisdiction and for failure to state a claim, pursuant to

Rule 12(b)(2) and Rule 12(b)(6).  See Third Motion to Dismiss [D.E. 275 at 6].  BMW AG seeks

dismissal with prejudice.  Id.  In their Opposition to BMW AG's Third Motion to Dismiss

(hereafter, "Opposition"), Plaintiffs first argue that, by granting them leave to amend, "the Court

necessarily decided that it can exercise personal jurisdiction over BMW AG and that the Fourth

Amended Complaint . . . was viable as pled."  See Opposition [D.E. 279 at 7] (emphasis in

original).  Plaintiffs further argue that BMW AG's jurisdictional arguments are successfully

countered by their "well-pled allegations and record evidence recently produced by [BMW NA],

BMW AG's wholly-owned subsidiary, distributor, and agent."  Id.[3]  With regard to the legal

sufficiency of their claims, Plaintiffs argue that they have adequately alleged facts that support

---

[3]   Notwithstanding this response, Plaintiffs also contended that they were entitled to jurisdictional
discovery.  See Opposition [D.E. 279 at 9].  However, on January 12, 2022, the Court confirmed that its
February 2021 Order granting Plaintiffs leave to amend their pleading, "Did Not Grant Jurisdictional
Discovery".  See Paperless Order [D.E. 336].  Therefore, Plaintiffs' demand for discovery is moot.

holding BMW AG directly and vicariously liable for the alleged violations of the Florida Dealer Act.  Id. at 7-8.

## THE FOURTH AMENDED COMPLAINT

In their Fourth Amended Complaint, Plaintiffs first allege that, in the past, their dealer agreements with BMW NA "were structured around the trading margin of new vehicle sales—*i.e.*, the difference between the wholesale price set by BMW [NA] for dealer vehicle purchases and the Manufacturer's Suggested Retail Price ('MSRP') set by BMW [NA] for retail customers" and that they "relied upon these margins for profits in their sales operations."  See Fourth Am. Compl. [D.E. 222 ¶ 32].  However, that structure was changed to an Added Value Program ("AVP") whereby Plaintiffs could earn bonuses by hitting performance targets (hereafter, "AVP metrics"), which Plaintiffs claim are unilaterally and arbitrarily set, changed, and evaluated.  Id. ¶¶ 33-35. The AVP bonuses are set as a percentage of MSRP (up to 5%) per vehicle sold.  Id. ¶ 36.  Plaintiffs claim that they have "no choice but to try and attain" the AVP metrics, which renders AVP "not a 'voluntary' program at all[.]"  Id. ¶ 38.  According to Plaintiffs, BMW NA published new Added Value Program Guides in January 2016 and June 2017.  Id. ¶ 39.[4]

Plaintiffs reference the following AVP metrics:

> ➢ Total Pre-Owned ("TPO") Component, based on the number of used vehicles sold, for a bonus payment of 0.5% MSRP on each new vehicle sold.  Id. ¶ 44.

> ➢ Service Effectiveness Component, based on customer service volume, for a bonus payment of 1.75% MSRP on each new vehicle sold.  Id. ¶ 62.

> ➢ Dealer Sales Loyalty Component, based on returning sales customers, for a bonus payment of 1.75% MSRP on each new vehicle sold.  Id. ¶ 77.

---

[4]  Plaintiffs also reference a change to the AVP for the year 2019, which was announced on October 1, 2018.  Id. ¶ 107.

Plaintiffs further allege that, in 2015, BMW NA "engaged in a nationwide practice of pressuring and attempting to coerce dealers to purchase BMW's excessive inventory and to report vehicles as sold (by 'punching' a Retail Delivery Report, or 'RDR'), when, in fact, those vehicles still sat unsold on dealers' lots." Id. ¶ 90.  According to Plaintiffs, "[u]ltimately, the dealer had to dispose of the punched vehicles, alongside its new and used inventory." Id. ¶ 93.  At the end of 2015, Plaintiffs "stopped punching unsold vehicles" due to excessive inventory, which ended their receipt of the associated "bonus money". Id. ¶ 96.

Finally, Plaintiffs challenge BMW NA's Dealer Effectiveness Metric, which is based on the new vehicle registrations for various vehicle class segments in each primary market area ("PMA") assigned to a dealer and computed as the ratio of actual sales to expected sales, expressed as a percentage. Id. ¶¶ 97-101.  Plaintiffs contend that this metric is "arbitrary and inequitable". Id. ¶ 103.

Based on these allegations, which they claim constitute violations of the Florida Dealer Act, see Fourth Am. Compl. [D.E. 222 at 22], Plaintiffs assert claims against both BMW NA and BMW AG.  Plaintiffs have withdrawn Counts V, VI, VII and XI of their Fourth Amended Complaint. See Plaintiffs' Opposition to BMW NA's Motion for Summary Judgment [D.E. 249 at 6 n.1].  Therefore, the surviving claims against BMW AG are:

| | |
|---|---|
| Count I: | Violation of the Florida Dealer Act, Fla. Stat. §§ 320.64(5) and (6)<br>BMW's Practice of Punching RDRs for Vehicles Not Sold to Consumers<br>(Against all Defendants) |
| Count II: | Violation of the Florida Dealer Act, Fla. Stat. § 320.64(34)<br>Total Pre-Owned Component – 0.5% MSRP<br>(Against all Defendants) |
| Count III: | Violation of the Florida Dealer Act, Fla. Stat. § 320.64(42)(a)<br>Sales Loyalty Component – 1.75% MSRP<br>(Against all Defendants) |

Count IV:    Violation of the Florida Dealer Act, Fla. Stat. § 320.64(42)(a)
                  Service Effectiveness Component – 1.75% MSRP
                  (Against all Defendants)

Count X:    Violation of the Florida Dealer Act, Fla. Stat. § 320.64(42)(a)
                  (Against all Defendants)

See Fourth Am. Compl. [D.E. 222 at 23-28, 36-37].[5]

Plaintiffs have characterized these claims as: the performance metrics claims; and the "punching" claims. See Hearing Transcript [D.E. 333 at 31].[6] The performance metrics claims are set forth in Counts III, IV and X, and are limited to injunctive relief. Id. at 31, 45. Plaintiffs' sole "punching" claim against BMW AG is set forth in Count I, id. at 46, and is limited to 2015. Id. at 55; see also Fourth Am. Compl. [D.E. 222 ¶¶ 90, 96] (alleging that the punching program started in 2015 and that Plaintiffs stopped punching at the end of 2015). Finally, Count II relates to an AVP metric based on used car sales, but appears to stand alone.

**STANDARD OF REVIEW**

*1. Leave to amend.*

Rule 15 of the Federal Rules of Civil Procedure ("Rule 15") provides that, "The court should freely give leave [to amend] when justice so requires." Fed R. Civ. P. 15(a)(2). The United States Supreme Court teaches that:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

---

[5] Counts VIII and IX are asserted against BMW NA only. Id. at 33-35.
[6] As noted above, the term "punching" relates to the alleged requirement that dealers purchase excessive inventory and report those vehicles as sold by "punching" a "Retail Delivery Report" or "RDR". See Fourth Am. Compl. [D.E. 222 ¶ 90].

Foman v. Davis, 371 U.S. 178, 182 (1962).  However, "the granting of a motion for leave to amend does not preclude a motion to dismiss the subsequent amended complaint, as different standards govern the two different motions."  United States v. Health Mgmt. Assocs., Inc., Case No. 4:10–cv–10013–KMM, 2013 WL 12077815, at *2 (S.D. Fla. Mar. 1, 2013) (citations omitted).

### 2. *Motion to dismiss for lack of personal jurisdiction.*[7]

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'"  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).  Complaints must include "properly pleaded facts pertinent to the conduct and activities of the defendant in the forum state[.]"  *Borislow v. Canaccord Genuity Grp. Inc., et al.*, No. 14-cv-80134, 2014 WL 12580259, at *4 (S.D. Fla. June 27, 2014) (internal quotation marks omitted) (citing *Elmex Corp. v. Atl. Fed. Sav. & Loan Ass'n of Ft. Lauderdale*, 325 So. 2d 58, 61 (Fla. 4th DCA 1976)); *see also Mcgee v. Cook*, No. 8:09-CV-2543-T-27TGW, 2011 WL 1365024, at *4–5 (M.D. Fla. Apr. 11, 2011) (holding that personal jurisdiction was insufficiently pled where the original complaint contained "insufficient specific allegations of these Defendants' business activities in Florida, their liens on Florida property, or their contracts to provide insurance in Florida").  When a defendant submits evidence in support of its challenge to personal jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."  *United Techs. Corp.*, 556 F.3d at 1274 (quoting *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).  "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff," *Diamond*

---

[7] This standard is taken *verbatim* from the Court's prior jurisdictional Order [D.E. 154 at 4-5].

*Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted), and still must "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

A federal court undertakes a two-step inquiry in determining whether personal jurisdiction over a nonresident defendant exists. First, the court must determine whether the exercise of jurisdiction is appropriate under Florida's long-arm statute or another jurisdictional statute. Under Florida law, the long-arm statute is satisfied if the parties can demonstrate that either general or specific jurisdiction exists. *See Dohler S.A. v. Guru*, No. 16-23137-CIV, 2017 WL 4621098, at *3 (S.D. Fla. Oct. 16, 2017). Specific jurisdiction "authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*, 736 F.3d at 1352 (citing *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n. 27 (11th Cir. 2009)).

Second, the court must determine whether personal jurisdiction over the defendant violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). That is, whether the defendant has such minimum contacts with the forum so that exercising personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Id.*

### 3. *Motion to dismiss for failure to state a claim.*

"In ruling on the motion to dismiss the district court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am., 795 F.2d 948, 954 (11th Cir. 1986). Nevertheless, "the plaintiff must plead 'enough

facts to state a claim to relief that is ***plausible*** on its face.'"   Coach, Inc. v. Swap Shop, Inc., 916

F. Supp. 2d 1271, 1278 (S.D. Fla. 2012) (emphasis in original) (quoting Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009)).  Thus, "[a] court considering a motion to dismiss may begin by identifying

allegations that, because they are mere conclusions, are not entitled to the assumption of truth.

While legal conclusions can provide the complaint's framework they must be supported by factual

allegations."  Id. (quoting Iqbal, 556 U.S. at 664).

### 4.   *Dismissal with prejudice.*

"In cases where the plaintiff has acted in good faith and has not been given a first chance

to amend its initial complaint, we have treated dismissal with prejudice as a remedy of last resort."

Eiber Radiology, Inc. v. Toshiba Am. Med. Sys, Inc., 673 F. App'x 925, 929 (11th Cir. 2016).

However, "[w]e have never required district courts to grant counseled plaintiffs more than one

opportunity to amend a deficient complaint, nor have we concluded that dismissal with prejudice

is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having

been offered ample opportunity to do so."  Id. at 930.

### 5.   *The Florida Motor Vehicle Dealer Act.*

The Florida Motor Vehicle Dealer Act, Fla. Stat. §§ 320.60-320.70, is intended "to protect

the public health, safety, and welfare of the citizens of the state by regulating the licensing of motor

vehicle dealers and manufacturers, maintaining competition, providing consumer protection and

fair trade and providing minorities with opportunities for full participation as motor vehicle

dealers."  Id. § 320.605.  The Florida Motor Vehicle Dealer Act provides, in pertinent part:

> No manufacturer, factory branch, distributor, or importer (all sometimes referred to
> hereinafter as "licensee") shall engage in business in this state without a license
> therefor as provided in ss. 320.60-320.70. No motor vehicle, foreign or domestic,
> may be sold, leased, or offered for sale or lease in this state unless the manufacturer,
> importer, or distributor of such motor vehicle, which issues an agreement to a motor
> vehicle dealer in this state, is licensed under ss. 320.60-320.70.

Id. § 320.61.

Plaintiffs predicate their Florida Dealer Act claims on sections 320.64(5), (6), (34), and

42(a), which provide:

> [A] licensee or applicant shall be liable for claims and remedies provided in ss. 320.695 and 320.697 for any violation of any of the following provisions. A licensee is prohibited from committing the following acts:
>
> ***
> (5) The applicant or licensee has coerced or attempted to coerce any motor vehicle dealer into accepting delivery of any motor vehicle or vehicles or parts or accessories therefor or any other commodities which have not been ordered by the dealer.
>
> (6) The applicant or licensee has coerced or attempted to coerce any motor vehicle dealer to enter into any agreement with the licensee.
>
> ***
> (34) The applicant or licensee, after the effective date of this subsection, has included in any franchise agreement with a motor vehicle dealer a mandatory obligation or requirement of the motor vehicle dealer to purchase, sell, or lease, or offer for purchase, sale, or lease, any quantity of used motor vehicles.
>
> ***
> (42)(a) The applicant or licensee has established, implemented, or enforced criteria for measuring the sales or service performance of any of its franchised motor vehicle dealers in this state which have a material or adverse effect on any motor vehicle dealer and which:
>
> 1.   Are unfair, unreasonable, arbitrary, or inequitable; or
>
> 2.   Do not include all relevant and material local and regional criteria, data, and facts. Relevant and material criteria, data, or facts include, but are not limited to, those of motor vehicle dealerships of comparable size in comparable markets. If such performance measurement criteria are based, in whole or in part, on a survey, such survey must be based on a statistically significant and valid random sample.

Id. § 320.64.

Sections 320.695 and 320.697 provide remedies in the form of injunctive relief and treble

damages, as follows:

> In addition to the remedies provided in this chapter, and notwithstanding the existence of any adequate remedy at law . . . any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer, is authorized to make application to any circuit court of the state for the grant, upon a hearing and for cause shown, of a temporary or permanent injunction, or both, restraining any person from . . . violating or continuing to violate any of the provisions of ss. 320.60-320.70, or from failing or refusing to comply with the requirements of this law or any rule or regulation adopted hereunder. Such injunction shall be issued without bond. A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction. . . .

Id. § 320.695.

> Any person who has suffered pecuniary loss or who has been otherwise adversely affected because of a violation by a licensee of ss. 320.60-320.70, notwithstanding the existence of any other remedies under ss. 320.60-320.70, has a cause of action against the licensee for damages and may recover damages therefor in any court of competent jurisdiction in an amount equal to 3 times the pecuniary loss, together with costs and a reasonable attorney's fee to be assessed by the court. Upon a prima facie showing by the person bringing the action that such a violation by the licensee has occurred, the burden of proof shall then be upon the licensee to prove that such violation or unfair practice did not occur.

Id. § 320.97.

### DISCUSSION

1. ***The Court's prior grant of leave to amend does not preclude BMW AG's Third Motion to Dismiss.***

Plaintiffs initially oppose BMW AG's Third Motion to Dismiss by arguing that, in granting them leave to amend, "the Court necessarily decided" that the exercise of personal jurisdiction over BMW AG is now proper and that the Fourth Amended Complaint is viable. See Opposition [D.E. 279 at 7]. In making this argument, Plaintiffs invoke the law of the case doctrine. Id. at 13-15. However, "law of the case applies only where there has been a final judgment." See Vintilla v. U.S., 931 F.2d 1444, 1447 (11th Cir. 1991) (quoting Gregg v. United States Indus., Inc., 715 F.2d 1522, 1530 (11th Cir. 1983), cert. denied, 466 U.S. 960 (1984)). Nevertheless, Plaintiffs rely

on United States v. Siegelman, 786 F.3d 1322 (11th Cir. 2015), to support their law of the case

argument:

> As most commonly defined, the law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the *same issues* in subsequent stages in the *same case*."

Id. at 1327 (emphasis in original).

In granting Plaintiffs leave to amend, the Court had to be guided by Rule 15's liberal

standard, which requires that leave be freely given "when justice so requires."  See Fed R. Civ. P.

15(a)(2).  While the factors to be considered in making such a decision include undue delay, bad

faith, repeated failure to cure deficiencies, undue prejudice, and futility of amendment, Foman,

371 U.S. at 182, there is nothing in the record to indicate that, in granting leave to amend, the

Court decided upon a rule of law that would govern the personal jurisdiction issues or the viability

of Plaintiffs' claims.  See Paperless Order [D.E. 216]; Status Conference Tr. [D.E. 228 at 9].  Thus,

the law of the case doctrine, as defined in Siegelman, is inapplicable here.  Moreover, "the granting

of a motion for leave to amend does not preclude a motion to dismiss the subsequent amended

complaint, as different standards govern the two different motions."  Health Mgmt. Assocs., 2013

WL 12077815, at *2.  Therefore, BMW AG's Third Motion to Dismiss is properly before the

Court.

### 2. *The Court lacks personal jurisdiction over BMW AG.*

With regard to personal jurisdiction, BMW AG argues that "Plaintiffs do not allege facts

giving rise to specific personal jurisdiction over AG under the Florida long-arm statute;" and that

"asserting jurisdiction over AG would not comport with constitutional due process."  See Third

Motion to Dismiss [D.E. 275 at 6].

As to the allegations in the Fourth Amended Complaint, BMW AG argues that:

Plaintiffs repeat their prior allegations that BMW NA acted at the direction of AG, that BMW NA is AG's agent in Florida, and that AG is liable under the Florida Dealer Act, all of which the Court previously considered in dismissing the [Corrected] Third Amended Complaint. Plaintiffs add *no* allegations related to Florida, or AG's relationship to Florida, that were not before the Court by way of the [Corrected] Third Amended Complaint or the Prior Record Evidence.

Id. at 10-11.[8]  BMW AG further argues that:

The "new" allegations in the Fourth Amended Complaint [FAC] fall into three general categories. First, Plaintiffs simply add conclusory statements that alleged conduct by BMW NA, principally concerning dealer incentive programs offered by BMW NA, including its Added Value Program ("AVP"), was engaged in "at AG's direction" or with its "direct involvement." *See, e.g.*, FAC ¶¶ 4, 38, 40, 43, 76, 85, 106, 109, 118, 126, 136. Second, Plaintiffs repeatedly replace the word "BMW" with "Defendants" without further explanation or support. *See, e.g.*, FAC ¶¶ 5, 18, 33, 34, 38, 42, 118. Finally, Plaintiffs add allegations referencing the Prior Record Evidence, all of which was considered by the Court "as part of the record" in dismissing the Third Amended Complaint.  *See* MTD Order at 2 n.2

Id. at 11.[9]   In support of its last point, BMW AG provides a chart, comparing the evidence supporting the added jurisdictional allegations in the Fourth Amended Complaint with the evidence Plaintiffs presented in opposition to BMW AG's Second Motion to Dismiss. Id. (citing Exhibit A [D.E. 275-1 at 2-3]).

At the Hearing, Plaintiffs argued that evidence they had submitted a few days prior showed "specific acts that are unlawful under the Florida Dealer Act by AG" and that such "a statutory violation, which we have alleged here, is a sufficient basis upon which to assert personal jurisdiction over a foreign corporation" such as AG.  See Hearing Transcript [D.E. 333 at 114, 116-17].  According to Plaintiffs, "AG deployed . . . business practices that the Florida legislature has defined as unlawful" and "this is the hook into the specific jurisdiction and the actions by AG

---

[8]  The term "Prior Record Evidence" refers to the exhibits in the Notice of Supplemental Authority [D.E. 150 (filed under seal)], which Plaintiffs presented at the hearing on BMW AG's Second Motion to Dismiss. See Third Motion to Dismiss [D.E. 275 at 9].  As previously noted, this evidence was "considered as part of the record" in the Court's Order [D.E. 154 at 2 n.2].
[9]  BMW AG notes that Plaintiffs also reference excerpts of the deposition testimony of former BMW NA President and CEO Ludwig Willisch. Id. at 11 n.6.

and the assertion of personal jurisdiction here." Id. at 117, 119.  Plaintiffs rely for this theory of

personal jurisdiction on Lewis v. Mercedes-Benz USA, LLC, 530 F. Supp. 3d 1183 (S.D. Fla.

2021).  In Lewis, the court analyzed the potential exercise of specific personal jurisdiction over

Daimler AG, a foreign defendant, in connection with the plaintiffs' claims under Florida's

Deceptive and Unfair Trade Practices Act ("FDUTPA").  Id. at 1235-40.  Initially, the court noted

that, under established Florida law, an alleged FDUTPA violation that causes injury in Florida

qualifies as a tortious act for purposes of establishing specific personal jurisdiction over an out-of-

state defendant pursuant to Florida's long-arm statute.  Id. at 1236 (citations omitted).[10]  Plaintiffs

analogize BMW AG's alleged violations of the Florida Dealer Act to FDUTPA violations but

proffer no similar supporting authority.  In essence, Plaintiffs are attempting to make an end run

around the Court's prior ruling that "there is no basis to hold that the Florida Dealer Act conveys

personal jurisdiction on BMW AG."  See Order [D.E. 154 at 9].  Moreover, Plaintiffs offer no

support for their proposition, which, when carried to its logical conclusion, would convert any out-

of-state defendant's alleged violation of a Florida statute that causes injury in Florida into a tortious

act for purposes of personal jurisdiction.  Thus, the undersigned concludes that Plaintiffs' reliance

on Lewis to satisfy the requirements of Florida's long-arm statute is misplaced.

Moreover, with regard to minimum contacts, Plaintiffs attempt to analogize BMW AG's

alleged "deployment of business practices" to products liability cases.  See Hearing Transcript

[D.E. 333 at 117].  According to Plaintiffs, BMW AG has "purposefully availed itself of the

privilege of" doing business in Florida as follows: "the issue is not the physical vehicle that travels

from Germany to Florida, it's the business practices that flow down through the distribution

network." Id. at 102, 120.  However, the undersigned finds no basis for such expansion of the

---

[10] Fla. Stat. § 48.193(1)(a)(2) provides for the exercise of specific personal jurisdiction over an out-of-state
defendant who personally or through an agent commits "a tortious act within this state." Id.

"stream of commerce" concept underpinning products liability jurisprudence.

Thus, the undersigned concludes that Plaintiffs have not succeeded in their most recent attempt to show that the Court may properly exercise personal jurisdiction over BMW AG.

### 3. *Plaintiffs have failed to state claims against BMW AG pursuant to the Florida Dealer Act.*

BMW AG also challenges the sufficiency of the Fourth Amended Complaint, arguing that "Plaintiffs do not allege adequately that AG is subject to, or violated, the Florida Dealer Act, which is the sole basis for the claims brought against AG." See Third Motion to Dismiss [D.E. 275 at 6]. In response, Plaintiffs argue that they need not allege BMW AG's direct liability for violations of the Florida Dealer Act. See Opposition [D.E. 279 at 29]. According to Plaintiffs, "[u]nder the plain language of Section 320.6405, BMW AG is liable for BMW NA's conduct." Id.

However, as argued by BMW AG, Plaintiffs only alleged joint and several liability and direct liability against BMW AG and did not allege vicarious liability in the Fourth Amended Complaint. See BMW AG's Reply in Support of its Third Motion to Dismiss [D.E. 292 at 13] (citing Fourth Am. Compl. [D.E. 222 ¶¶ 120, 126, 136, 145, 146, 199]). Thus, Plaintiffs have not overcome BMW AG's argument that they failed to adequately allege violations of the Florida Dealer Act.

Even if Plaintiffs had alleged vicarious liability in the Fourth Amended Complaint, their reliance on Section 320.6405 is unavailing. That provision of the Florida Dealer Act states, in relevant part:

> Any parent, subsidiary, or common entity of a manufacturer; distributor; importer; or other entity, which by contractual arrangement or otherwise pursuant to the direction of the manufacturer, engages in the distribution in this state of line-make motor vehicles manufactured or substantially manufactured by such manufacturer, shall be deemed to be the agent of the manufacturer for the purposes of any franchise agreement entered into between such agent and a motor vehicle dealer engaged in business in this state and shall be bound by the terms and provisions of

such franchise agreement as if it were the principal. A manufacturer of line-make motor vehicles which are offered for sale or lease in this state under any franchise agreement executed by an agent of such manufacturer is bound by the terms and provisions of such franchise agreement as if it and not the agent had executed the franchise agreement and, notwithstanding whether it is licensed pursuant to s. 320.61, said manufacturer shall be subject to all of the restrictions, limitations, remedies, and penalties of ss. 320.60-320.70 related to such franchise agreement, the performance thereof, or any cause of action pertaining thereto.

See Fla. Stat. § 320.6405.

If Plaintiffs had alleged that (1) BMW NA's distribution of BMW brand motor vehicles in Florida was undertaken "by contractual arrangement or otherwise pursuant to the direction of" BMW AG, then (2) BMW AG would be "bound by the terms and provisions" of Plaintiffs' dealer agreements and "subject to all of the restrictions, limitations, remedies, and penalties of ss. 320.60-320.70 related to such [dealer] agreement[s], the performance thereof, or any cause of action pertaining thereto." Id. However, Plaintiffs do not allege the premise set forth in (1) above. Rather, in connection with their personal jurisdiction arguments, they contended that "BMW AG must have an oral or written contract with BMW NA to distribute cars in Florida, which is required by Florida law[,]" relying on Florida DHSMV Form 84256. See Opposition [D.E. 279 at 19]. The referenced form requires Florida "Distributor and Importer" applicants to "provide copies of an agreement between the manufacturer and themselves authorizing the applicant to distribute or import the manufacturer's vehicles." Id. at 19–20 (quoting DHSMV Form 84256). In essence, Plaintiffs are asking the Court to infer the existence of the contractual arrangement required for application of Section 320.6405. Plaintiffs' actual allegations in the Fourth Amended Complaint do not support such an inference.

Regardless, Plaintiffs misread Section 320.6405 as imposing vicarious liability on BMW AG for the acts of BMW NA. Plaintiffs' attempt to cast Section 320.6405 of the Florida Dealer Act as a vicarious liability statute has no support in the statutory text; hence, Plaintiffs cannot

17

allege violations of the Florida Dealer Act by BMW AG based on BMW NA's alleged conduct.

Thus, the undersigned concludes that the Fourth Amended Complaint is subject to dismissal for failure to state the claims for violations of the Florida Dealer Act asserted against BMW AG.

### 4. BMW AG is entitled to dismissal with prejudice.

In their Corrected Third Amended Complaint, Plaintiffs asserted claims against BMW AG. See Corrected Third Am. Compl. [D.E. 127].  After finding that it lacked personal jurisdiction over BMW AG and dismissing that pleading without prejudice, the Court granted Plaintiffs leave to amend [D.E. 154, 216].  However, the undersigned has found, once again, that personal jurisdiction over BMW AG is lacking; and that Plaintiffs' claims against BMW AG under the Florida Dealer Act are insufficient.

Courts are not required "to grant counseled plaintiffs more than one opportunity to amend a deficient complaint" and "dismissal with prejudice is [not] inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so." Eiber Radiology, 673 F. App'x at 930.  Therefore, the undersigned respectfully recommends that BMW AG be dismissed with prejudice.

### CONCLUSION

Based on the foregoing considerations, it is

RESPECTFULLY RECOMMENDED that BMW AG's Third Motion to Dismiss [D.E. 275] be GRANTED WITH PREJUDICE.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge.  Failure to file timely objections may bar the parties from

attacking the factual findings contained herein on appeal.  See Resolution Tr. Corp. v. Hallmark

Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance

with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district

court's order based on unobjected-to factual and legal conclusions."  See 11th Cir. R. 3-1 (I.O.P.

- 3).

          RESPECTFULLY SUBMITTED in Miami, Florida this 16th day of February, 2022.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE


cc:     United States District Judge Darrin P. Gayles
        Counsel of Record